(No. 61638.—

THE PEOPLE *ex rel.* RONALD EPPINGA, Appellant, v. JIM EDGAR, Secretary of State, Appellee.

*Opinion filed April 18, 1986.*

Stephen M. Komie, of Chicago (Robert S. Bailey, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma J. Stewart, Solicitor General, and Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for

appellee.

JUSTICE WARD delivered the opinion of the court:

On March 1, 1985, the plaintiff, Ronald Eppinga, filed a complaint against Jim Edgar, the Secretary of State, in the circuit court of Cook County seeking restoration of his driving privileges and a declaration that the provision of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1983, ch. 95½, par. 1—100 *et seq.*) under which his license was revoked was unconstitutional. On March 22, 1985, the court granted summary judgment in favor of the Secretary of State (Secretary), and we granted the plaintiff's motion for direct appeal under our Rule 302(b) (94 Ill. 2d R. 302(b)).

On January 9, 1985, the plaintiff was involved in an automobile collision in Proviso Township. The police officer who came upon the scene determined that the plaintiff was traveling southbound in a northbound lane of a four-lane divided highway and struck a northbound vehicle head-on. The reporting officer and a companion officer detected a "strong odor" of alcohol on the plaintiff's breath and observed that his face was flushed and that his eyes were bloodshot. His speech was described as "confused" and "incoherent." The plaintiff first said that he did not know where he was and admitted to having had four or five drinks of scotch. He was arrested and charged with the offense of driving under the influence of alcohol (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(2)). The driver and the passenger of the other vehicle were severely injured. The driver sustained a broken left knee, sprained left ankle, ruptured left lung, and multiple contusions on her face. The passenger's left arm was fractured in two places, requiring surgery. She also suffered a swelling of the facial area, a loss of short-term memory, and blurred vision. Weeks after the accident she continued to experience loss of memory and

double vision.

On January 30, 1985, the State's Attorney of Cook County prepared a "Request for Administrative Revocation" certifying that the described charge had been filed against the plaintiff, and that serious bodily injury had resulted from the collision. The State's Attorney forwarded this request and the police reports to the Secretary. The Secretary found that the case was one in which he was authorized, under the Code and his own administrative rules, upon a showing of sufficient evidence, to revoke the plaintiff's driving privileges prior to his trial, because the offense was one "for which mandatory revocation of license or permit is required upon conviction" (Ill. Rev. Stat. 1983, ch. 95½, par. 6—206(a)(1)), and the incident leading to the charge "resulted in serious bodily injury or death" (8 Ill. Admin. Reg. 2200, 2203 (Feb. 17, 1984) (codified at 92 Ill. Admin. Code, ch. II, sec. 1040.35)).

In part, section 6—206 provides:

"Discretionary authority to suspend or revoke license or permit—Right to a hearing.

(a) The Secretary of State is authorized to suspend or revoke the license, permit or driving privileges of any person without preliminary hearing upon a showing by his records or other sufficient evidence that such person:

1. Has committed an offense for which mandatory revocation of license or permit is required upon conviction.

\* \* \*

(c) 1. Upon suspending or revoking the license or permit of any person as authorized in this Section, the Secretary of State shall immediately notify such person in writing of the order revoking or suspending the license or permit. Such notice to be deposited in the United States mail, postage prepaid, to the last known address of such person.

\* \* \*

\*\*\* the driver may request a hearing pursuant to

Section 2—118 of this Code." (Ill. Rev. Stat. 1981, ch. 95½, par. 6—206.)

Section 2—118 of the Code provides that if a hearing is requested, the date of the hearing shall be set within 20 days of receipt of the licensee's request. (Ill. Rev. Stat. 1983, ch. 95½, par. 2—118(a).) Section 2—118(d) provides that "no person is [to be] deprived of due process of law," and the provision following states that the decision of the Secretary is subject to review in the circuit court. (See Ill. Rev. Stat. 1983, ch. 95½, par. 2—118(e).) Section 6—206(c)(3) provides that if the revocation is not rescinded by the Secretary after hearing, the driver may apply for a restricted driving permit to relieve "undue hardship."

The Secretary has adopted rules applicable to section 6—206. A statement of the rules is important for an understanding of the Secretary's action under the section:

"b)1) When the Secretary of State has received *sufficient evidence* that a person has committed one or more of the following offenses or similar provisions of a local ordinance:

A) driving under the influence of alcohol, other drugs or a combination thereof;

\* \* \*

and these offenses, currently awaiting court disposition, *resulted in serious bodily injury or death*, the driving record of the individual shall be reviewed for possible drivers license revocation by the Department of Driver Services.

2)A) In determining whether or not action should be taken, the driving record and other sufficient evidence showing that the person has committed such an offense shall be examined. *'Sufficient evidence'* shall be defined as:

i) copies of court documents showing the charging of a person for one or more of the named offenses in paragraph (b) of this section; or

ii) transcripts of coroner's proceedings \*\*\*

iii) affidavits of eye witnesses \*\*\*

iv) any other competent evidence. Examples of what would constitute other competent evidence include but are not limited to; laboratory reports, accident reports and other documentation deemed important and probative by the State's Attorneys.

B) Such information shall be provided with a letter of transmittal from the appropriate State's Attorney.

3) 'Serious bodily injury' shall be defined as:

A) bodily injury which involves a substantial risk of death; or

B) unconsciousness; or

C) extreme physical pain; or

D) protracted and obvious disfigurement; or

E) protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

4) If sufficient evidence is received from the State's Attorney and indicates that a person has committed one or more of the named offenses in paragraph (b) of this Section, and that these offenses, currently awaiting court disposition, involved a motor vehicle accident which caused serious bodily injury or death, the driving privileges of the individual shall be revoked. \*\*\*" (Emphasis added.) 8 Ill. Admin. Reg. 2200, 2203-04 (Feb. 17, 1984) (codified at 92 Ill. Admin. Code, ch. II, sec. 1040.35).

Upon the determination to revoke the plaintiff's license pursuant to these rules, the Secretary sent written notice of the revocation to the plaintiff, as provided for by the Illinois Vehicle Code. In the notice the Secretary explained the availability of a "prompt" hearing at the plaintiff's request. The plaintiff did not request a hearing but instead filed the complaint seeking *mandamus,* *quo warranto,* and declaratory relief to restore his driving privileges.

The plaintiff contends that because he was not given a prerevocation hearing he was denied due process of

law.

Once issued, a driver's license is considered a property interest under the protection of the due process clause. (*Bell v. Burson* (1971), 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586.) In *Mathews v. Eldridge* (1976), 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893, the Supreme Court held that due process did not require that a hearing be held prior to the termination of disability benefits under the Social Security Act. In its holding, the court stated there are three factors for consideration in determining when a prior hearing is required to afford due process:

"[1] the [nature of the] private interest that will be affected by the official action;

[2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;

[3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903.)

In two subsequent decisions the Supreme Court applied these factors in upholding the termination of driving privileges prior to a hearing. The first, *Dixon v. Love* (1977), 431 U.S. 105, 52 L. Ed. 2d 172, 97 S. Ct. 1723, considered another provision of section 6—206 of the Illinois Vehicle Code. In *Love* the licensee, a truck driver, was first suspended because of three traffic convictions within a 12-month period. He was suspended a second time for driving while his license was suspended and was suspended a third time for three speeding convictions in a 12-month period. Upon the third suspension, his license was revoked under the Code's provisions for having been suspended three times within a 10-year period. The licensee did not request a post-revocation hearing, which,

as now, was available. As the plaintiff did here, Love immediately filed suit claiming he had a right to a prerevocation hearing. The Supreme Court examined the three factors in *Mathews* and first judged that a driver's license, though important, was "not so great as to require" a prerevocation evidentiary hearing. (431 U.S. 105, 113, 52 L. Ed. 2d 172, 180, 97 S. Ct. 1723, 1728.) Second, the court considered that the risk of erroneous deprivation was not great, because the basis of the revocation, *i.e.*, the suspensions and convictions, were facts simply recorded and were not by their nature subject to subjective or differing interpretations. Thus, the only risk of an erroneous deprivation of a right was through clerical error. Third, the court held that the governmental interest for such a procedure of revocation was great. Most important was the public interest in removing drivers from the roads who were public hazards. There was the additional interest of administrative efficiency which would be hindered by the necessity of a prerevocation hearing which licensees often would request simply to delay the revocation process.

In *Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612, the driver's license was suspended for refusing to submit to a breath-analysis test. In considering the first factor, the court noted that the property interest (the driver's license) was the same as the interest involved in *Love*, and though there were some factual differences, such as the length of the suspensions involved and the timing for the post-revocation hearings, the differences did not mandate a presuspension hearing. Similarly, the governmental interest (the third factor) of highway safety was the same as in *Love*. It would appear that the governmental interest was even greater in *Montrym* because the suspension involved an especially dangerous subgroup of unsafe drivers, drunken drivers. The court cited drunk-driving fatality

statistics for Massachusetts, where the driver resided, and stated: "States surely have at least as much interest in removing drunken drivers from their highways as in summarily seizing mislabeled drugs or destroying spoiled foodstuffs" (other situations justifying State action against property interests prior to a hearing). (443 U.S. 1, 17, 61 L. Ed. 2d 321, 334, 99 S. Ct. 2612, 2620-21.) The court stated that the summary suspension for refusal to submit to a breath test served public safety in three ways: first, it deterred drunk driving; second, it provided an inducement to take the breath test and thus facilitated the collection of evidence for use in judicial proceedings; and third, it removed the hazard of drunk drivers on the roads.

In its consideration of the second factor, the risk of erroneous deprivation, the Supreme Court in *Montrym* went beyond the holding of *Love*. Whereas the risk of an erroneous deprivation was considered minimal in *Love* because the basis of the revocation was simply and nearly irrefutably the presence of three suspensions on the licensee's record, the basis of the action in *Montrym* was the report of a police officer's observations. The evidence that was required for a licensee's suspension, the court stated, was that the "the driver has been arrested for driving while under the influence of an intoxicant, probable cause exists for arrest, and the driver refuses to take a breath-analysis test." In regard to the risk of error in the officer's determination, the court said:

> "The officer whose report of refusal triggers a driver's suspension is a trained observer and investigator. He is, by reason of his training and experience, well suited for the role the statute accords him in the presuspension process. And, as he is personally subject to civil liability for an unlawful arrest and to criminal penalties for willful misrepresentation of the facts, he has every incentive to ascertain accurately and truthfully report the facts."

(*Mackey v. Montrym* (1979), 443 U.S. 1, 14, 61 L. Ed. 2d 321, 332, 99 S. Ct. 2612, 2619.)

The court concluded that the risk of error in the presuspension procedures was "not so substantial" as to deny the licensee due process of law.

The *Montrym* court's reasoning as to the "risk of erroneous deprivation" is applicable to the situation here. In *Montrym*, the suspension was based on the observation of police officers that the driver was under the influence of alcohol and that he refused to submit to a breath-analysis test. That is essentially what was present here: there was a determination that the driver was under the influence of alcohol, and the driver refused to submit to a breath-analysis test. As for the risk of error, the officers here, too, are "trained observers" who are charged with truthfully reporting the facts. While the State, of course, will have the burden of proving the driver guilty beyond a reasonable doubt before criminal sanctions can be imposed, the risk of erroneous deprivation, under *Montrym*, is not so great as to prohibit a revocation or suspension prior to a hearing.

Consideration of the remaining two factors from *Mathews* does not require a contrary result. The private interest (the first factor) here, as in *Love* and *Montrym*, is the privilege of driving a motor vehicle. The interest is concededly important and warrants due process protection, but under the holdings in *Love* and *Montrym*, due process does not mandate a hearing *prior* to the deprivation of this interest. Too, the governmental interest (the third factor), as in *Love* and *Montrym*, is highway safety. More specifically, as in *Montrym*, the safety hazard is drunk drivers. It is clear that a serious threat to human life and well-being is posed by those drivers. (See, *e.g., People v. Bartley* (1985), 109 Ill. 2d 273, 285.) While drunk driving and its consequences represent one of our society's gravest problems, it should not be over-

looked that it is a problem that at least in part is remediable. A summary revocation of driving privileges both deters drunk driving and removes drunk drivers from public roads.

The plaintiff argues that he does not pose a threat to public safety because his driving record prior to this incident was good, and that a summary revocation is appropriate only, if at all, for habitual offenders. The plaintiff's driving resulted in serious injuries to two persons. The application of the statute and the Secretary's guidelines to the plaintiff was not improper or contrary to the governmental interests.

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*