INTERSTATE MATERIAL CORPORATION, Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (4th Division)   No. 85—2986

Opinion filed December 4, 1986.

Rufus Cook, of Chicago (Cook Partners, Ltd., of counsel), for appellant.

Judson H. Miner, Acting Corporation Counsel, of Chicago (Mary K. Rochford and John T. Maher, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Interstate Material Corporation (Interstate), an Illinois company that manufactures ready-mix concrete and supplies building materials, appeals from the trial court's denial of its motion for a preliminary injunction to bar defendant, city of Chicago (city), from revoking its certification as a minority business enterprise (MBE). Briefly stated, the issue presented for our review is whether the trial court erred in denying Interstate's motion for a preliminary injunction.

We reverse.

Interstate's complaint and attached documents represented the following. Interstate submitted an application to the city for recertification as an MBE on July 15, 1985. On July 19, 1985, Interstate received formal written notification that its recertification had been denied. The letter, which was attached to Interstate's complaint, stated that "[a]fter a careful review of your application, the City of Chicago [determines that] the firm does not meet the eligibility standards *** that certified businesses [be] at least 51 percent owned and controlled by minorities or women[,] [that the] minority or women owners *** direct the management, policies and daily operations of the firm [and that the] business [be] *** independently operated." The city's letter noted that Interstate's "application and supporting documents [do] not indicate that our firm is at least 51 percent owned by minorities." The city stated that its own "investigation further disclosed that the organizational structure of your firm does not allow for minority control. Further, your firm has not demonstrated to be an independently operated business."

The city's letter advised Interstate that the city's decision was "fi-

nal." It also informed Interstate, "if you feel that you were wrongly denied certification as a[n] *** MBE, you may file an appeal in writing to the U.S. Department of Transportation. The appeal must be signed and dated no later than 180 days from the date of this denial."

Interstate subsequently requested that the city reconsider its decision, in a letter dated July 23, 1986. In that correspondence, also attached to its pleading, Interstate noted that it had been verbally advised, in a telephone conversation with a city MBE program official on July 18, of the reasons for the city's conclusion that Interstate was not an MBE. Interstate's letter responded to these telephonically transmitted reasons for denial of recertification. In a letter dated August 2, attached to Interstate's complaint, the city again denied Interstate's request for recertification, restating and delineating further its specific reasons for denial. Thereafter, on August 26, Interstate again responded in writing in greater detail to the city's conclusion that Interstate was not an MBE. This letter was also attached to Interstate's pleading. Interstate's complaint does not disclose whether the city responded to this correspondence.

In its complaint, Interstate alleged that when it applied for recertification, Interstate "requested the opportunity to address the committee [of the city which reviews MBE applications], present evidence in its own behalf, and to rebut unfavorable evidence[,] [and that] [t]hese requests were denied by the [city]." Interstate alleged that it also "requested the names of the committee members assigned to review the application, to assure itself of an impartial committee[,] [and that] [t]his request was summarily denied by the [City]."

Interstate's complaint further stated that when Interstate subsequently responded to the city's reasons for denial, Interstate "sought to be allowed to present further documentation. It further sought to address the committee in order to present the committee with information on the nature of the industry in which it is engaged to explain the documentation of its qualifications, to refute any adverse information received by the committee, and to address the standards to be applied by the committee in making its determination. The [city] persisted in denying Interstate any form of hearing before the committee." Interstate alleged that "[s]ubsequent to the August 2, 1985 letter [of the city], Interstate has persisted in its efforts to secure a hearing and establish its eligibility for continued certification as [an MBE], and [the city] ha[s] persisted in denying Interstate a hearing and certification."

Interstate filed a four-count verified complaint against the city on October 3, 1985. It alleged that the manner in which the city had de-

nied Interstate's request for MBE recertification violated 42 U.S.C. sec. 1983 (1985) and deprived Interstate of due process of law under the United States Constitution (U.S. Const., amend XIV) (count I); violated 42 U.S.C. secs. 1981 and 1983 (1985) and various provisions of the United States Department of Transportation's (USDOT's) MBE regulations (49 C.F.R. sec. 23.1 *et seq.* (1985) (count II); violated Interstate's right to due process under the Illinois Constitution (Ill. Const. 1970, art. I, sec. 2) (count III); and contravened the city's executive order which established the city's MBE program (City of Chicago Executive Order 85–2 (April 3, 1985)) (count IV). Interstate requested a declaration that the city's action violated procedural due process and the city's executive order, injunctive relief to prevent the city from decertifying Interstate without a hearing pursuant to which uniform procedures and standards would be applied to determine Interstate's eligibility for recertification, and compensatory and punitive damages. Interstate also sought a mandatory injunction to compel the city's adoption of recertification procedures that comport with due process.

In its motion for a preliminary injunction, Interstate requested that the court enjoin the city "from any action which interferes with Interstate's ability to participate in federally assisted and other City of Chicago projects as a[n] [MBE], unless and until Interstate is properly found to be ineligible after being afforded due process," and that the court bar the city "from decertifying Interstate on the basis of unlawful, arbitrary and discriminatory standards." The trial court denied Interstate's motion on the ground that the administrative remedy of an appeal to USDOT "afford[s] substantial due process." Interstate appeals.

■■ Inasmuch as the city did not file an answer to Interstate's verified complaint, the factual basis of Interstate's motion for preliminary injunction is derived from Interstate's pleadings and any verified supplement thereto. (*H.K.H. Development Corp. v. Metropolitan Sanitary District* (1964), 47 Ill. App. 2d 46, 51, 196 N.E.2d 494, 496.) As a result the well-pleaded factual allegations of Interstate's complaint must be taken as true for the purposes of review of the trial court's denial of Interstate's preliminary injunction motion. (See *City of Chicago v. Geraci* (1975), 30 Ill. App. 3d 699, 702, 332 N.E.2d 487, 490.) In addition, we note that in its complaint, Interstate alleged that it was certified as an MBE by the city in July 1983. It further stated that in July 1985, it submitted an application to the city for recertification. Thus, based on Interstate's verified complaint, we must assume it was certified as an MBE in July 1983, and that in July 1985 it was denied recertification as an MBE.

As currently structured, the city of Chicago's MBE program is patterned after USDOT regulations for the award to MBEs of government contracts funded by USDOT monies. (See 49 C.F.R. sec. 23.1 *et seq.* (1985); City of Chicago Executive Order 85—2 (April 3, 1985).) Under these regulations, recipients of USDOT funds are required, *inter alia*, to undertake a variety of measures to ensure that MBEs "have the maximum opportunity to participate in the performance of contracts financed in whole or in part" with USDOT funds. (49 C.F.R. sec. 23.43(a)(1) (1985).) Among the measures required, USDOT regulations call for a "set-aside" of a certain percentage of federally funded government contracts to MBEs. (49 C.F.R. sec. 23.45 (1985).) USDOT regulations define an MBE as "a small business concern, *** which is owned and controlled by one or more minorities or women." (49 C.F.R. sec. 23.5(f) (1985).) USDOT defines "owned and controlled" as "at least 51 per centum owned by one or more minorities or women or, in the case of a publicly owned business, at least 51 per centum of the stock of which is owned by one or more minorities or women; and *** management and daily business operations *** controlled by one or more such individuals." 49 C.F.R. sec. 23.5(f) (1985).

In April 1985, the city of Chicago established a "set-aside" program that applies to the award of all city contracts, regardless of whether those agreements are fully or partially funded by USDOT grants. (City of Chicago Executive Order 85—2 (April 3, 1985).) Under the city's program, the "Purchasing Agent [of the City of Chicago] shall establish a goal of awarding not less that 25% of the annual dollar value of all City contracts to qualified MBEs." (City of Chicago Executive Order 85—2, sec. 2 (April 3, 1985).) The city program further requires that "[t]o the extent practicable, the Purchasing Agent shall award contracts requiring the expenditure of funds not exceeding $10,000 to qualified MBEs." (City of Chicago Executive Order 85—2, sec. 3(f) (April 3, 1985).) The city's definition of MBE is identical to that found in USDOT regulations. See City of Chicago Executive Order 85—2, sec. 1(b) (April 3, 1985); 49 C.F.R. sec. 23.5(f) (1985).

USDOT regulations recognize that "[s]ubstantial concern has been expressed about the infiltration of DOT-assisted programs by 'fronts'—businesses that claim to be owned and controlled by minorities, women, or other disadvantaged individuals, but which, in fact are ineligible for participation is [*sic*] DOT-assisted programs as MBEs, WBEs or disadvantaged businesses. The Department *** believe[s] strongly that recipients should take prompt action to ensure that only firms meeting the eligibility criteria of 49 CFR Part 23 participate as

MBEs, WBEs, or disadvantaged businesses in DOT-assisted programs." (49 C.F.R. sec. 23 app. A, at 149 (1985).) To avoid difficulties of this nature which the city had apparently already begun to encounter, the city of Chicago's MBE program, as detailed in Executive Order 85–2, establishes the position of a contract compliance officer to oversee the city's program. (City of Chicago Executive Order 85–2, sec. 5 (April 3, 1985); see James H. Lowry & Associates, Study of Minority and Women Enterprises; Procurement Programs for the City of Chicago (March 1985).) The compliance officer is designated the duty to "[e]stablish uniform procedures to apply for certification as MBE *** and to appeal from denial of certification as MBE." (City of Chicago Executive Order 85–2, sec. 5(b) (April 3, 1985).) The executive order specifies that an application for certification shall be in writing, executed under oath, and "shall contain such information as may assist the Contract Compliance Officer in determining the status of the applicant." (City of Chicago Executive Order 85–2, sec. 5(b) (April 3, 1985).) Certification, or its denial, "shall be completed no later than 60 days after receipt of bid or proposal for a contract or subcontract contemplating the applicant's participation as MBE." City of Chicago Executive Order 85–2, sec. 5(b) (April 3, 1985).

The executive order further states, without additional detail, that the contract compliance officer is designated the duty to "[e]stablish uniform procedures, consistent with the principles of due process of law, for the decertification of MBEs *** which have been improperly certified or no longer qualify for certification, and for appeal from decertification." (City of Chicago Executive Order 85–2, sec. 5(g) (April 3, 1985).) It also obligates the officer to "[i]nvestigate the status of certified MBEs *** to determine whether they should retain certification." (City of Chicago Executive Order 85–2, sec. 5(f) (April 3, 1985).) The executive order specifies that an investigation "of the status of all currently certified MBEs *** shall be undertaken immediately after the effective date of this Order [April 3, 1985], with priority given to investigation of previously certified firms to which contracts or subcontracts are awarded after the effective date hereof." (City of Chicago Executive Order 85–2, sec. 5(f) (April 3, 1985).) It was apparently pursuant to his last requirement that the MBE certification of Interstate was reviewed by the city in July 1985.

Interstate contends that it has satisfied the requirements for preliminary injunctive relief because its complaint demonstrated that it was denied procedural due process by the city. The substance of this argument is apparently founded upon Interstate's complaint insofar as the pleading requested that the court enjoin the city's revocation of

Interstate's MBE certification until Interstate has been afforded a hearing in accordance with due process. In response to Interstate's claims on appeal, the city argues that its denial of Interstate's MBE recertification without an opportunity for a hearing did not deprive Interstate of procedural due process. In light of these circumstances, we do not consider whether Interstate would be entitled to a preliminary injunction predicated upon other aspects of Interstate's pleading not pertinent to the arguments of the parties in this appeal, nor do we consider whether Interstate would be entitled to a preliminary injunction based upon its requests for declaratory or mandatory injunctive relief or for compensatory and punitive damages.

■ The "essential elements" for the allowance of preliminary injunctive relief are "the existence of a protectable interest in the plaintiff which will suffer irreparable harm if the injunction is not issued and the likelihood of plaintiff succeeding on the merits." (*Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 387, 483 N.E.2d 1271, 1278.) In this regard, four factors are significant: (1) whether plaintiff possesses a clearly ascertained right in need of protection; (2) whether plaintiff will suffer irreparable harm without the injunction; (3) whether there is an adequate remedy at law for plaintiff's injury; and (4) whether plaintiff is likely to be successful on the merits of his action. 108 Ill. 2d 373, 387, 483 N.E.2d 1271, 1278.

■ The purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits of the cause in order to maintain the last uncontested status which preceded the controversy. (*Howard Schnepper v. American Information Technologies, Inc.* (1985), 136 Ill. App. 3d 678, 680, 483 N.E.2d 987, 989.) In the present case, the last uncontested status that preceded the instant controversy was the status of Interstate as a certified MBE.

Interstate contends that its clearly ascertained right in need of protection is Interstate's due process right to a hearing regarding its recertification as an MBE. This argument requires an analysis of the likelihood of Interstate's success on the merits of its underlying complaint, to the extent appropriate upon review of a trial court's denial of preliminary injunctive relief. Probable success on the merits will suffice to permit the allowance of preliminary injunctive relief. *Buzz Barton & Associates, Inc. v. Giannone* (1986), 108 Ill. 2d 373, 387, 483 N.E.2d 1271, 1278.

Interstate's complaint is founded in pertinent part on the premise that the city's refusal to renew Interstate's certification as an MBE without providing it an adequate hearing constitutes a deprivation of due process. Interstate contends first that it has a property right in

its recertification as an MBE. Since the city's MBE program applies to all city contracts, not simply those where USDOT funds will be utilized, Interstate's due process property claim relies upon the city's executive order which established the city's program, as well as USDOT MBE regulations.

■ A person's interest in a government benefit is recognized as a due process property interest where the individual has a legitimate claim or entitlement to the benefit upon the satisfaction of legally enumerated uniform criteria set forth in State or Federal law, local ordinances, or mutually explicit understandings. (See generally *Board of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701; *Graham v. Richardson* (1971), 403 U.S. 365, 29 L. Ed. 2d 534, 91 S. Ct. 1848.) Licenses or permits which entitle the holder to engage in certain business or professional activities have long been recognized as "property" protected by procedural due process. See, *e.g.*, *Reed v. Village of Shorewood* (7th Cir. 1983), 704 F.2d 943 (liquor license); *Board of Education v. State Board of Education* (1986), 113 Ill. 2d 173, 497 N.E.2d 984 (teaching certificate); *Phillips v. Graham* (1981), 86 Ill. 2d 274, 427 N.E.2d 550 (harness horse trainer license).

■ Interstate's complaint contains allegations likely to establish that its MBE recertification may be a due process property interest. The city's program rules indicate to MBEs that they are entitled to the continuation of MBE certification so long as the firm continues to satisfy the city's uniform, enumerated standards. The executive order which establishes the city's MBE program sets forth specific criteria for MBE certification. (See City of Chicago Executive Order 85–2, sec. 1(b) (April 3, 1985); see also 49 C.F.R. sec. 23.53 (1985).) Once MBE certification is conferred by the city, this certification remains in full force and effect for an indefinite period of time, provided the firm continues to satisfy the city's specified criteria of what constitutes a "minority business enterprise." (See City of Chicago Executive Order 85–2, sec. 5(e) (April 3, 1985); see also 49 C.F.R. secs. 23.51, 23.53 (1985).) The holder of an MBE certification is entitled to separate consideration in the award of all city contracts. (See City of Chicago Executive Order 85–2, sec. 2 (April 3, 1985).) As a result, we conclude that when the trial court later adjudicates the merits of Interstate's complaint against the city of Chicago, Interstate will be likely to prove that its recertification as an MBE by the city of Chicago is a due process property interest. See *Cornelius v. La Croix* (E.D. Wis. 1983), 575 F. Supp. 1392.

■ Interstate also claimed in its complaint that the city's refusal

to afford Interstate a prerevocation or post-revocation of MBE certification hearing denied Interstate due process of law. The essence of due process protection is notice of the pending government action and an opportunity to be heard with regard to that intended action. (*Logan v. Zimmerman Brush Co.* (1982), 455 U.S. 422, 434-35, 71 L. Ed. 2d 265, 276-77, 102 S. Ct. 1148, 1156-57; *Boddie v. Connecticut* (1971), 401 U.S. 371, 379, 28 L. Ed. 2d 113, 118, 91 S. Ct. 780, 785.) The particular nature and timing of the notice and opportunity to be heard depend upon the balancing of the competing interests at stake. (See *Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 84 L. Ed. 2d 494, 105 S. Ct. 1487; *Bell v. Burson* (1971), 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586; *Goss v. Lopez* (1975), 419 U.S. 565, 42 L. Ed. 2d 725, 95 S. Ct. 729.) These interests include "the [nature of the] private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; [and] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *People ex rel. Eppinga v. Edgar* (1986), 112 Ill. 2d 101, 107, 492 N.E.2d 187, 189, quoting *Mathews v. Eldridge* (1976), 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903; see also *Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 84 L. Ed. 2d 494, 105 S. Ct. 1487.

At a minimum, the holder of a due process property right is entitled to notice of the government's decision and an opportunity to respond thereto prior to enforcement of the government's decision. In these circumstances, the holder is then entitled to a full hearing within a reasonable period of time following enforcement of the government's decision. (See *e.g., People ex rel. Eppinga v. Edgar* (1986), 112 Ill. 2d 101, 107, 492 N.E.2d 187.) Where the interests of the property holder outweigh the concerns of the government, the individual must be afforded a hearing prior to deprivation of the property right. (*Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 542-45, 84 L. Ed. 2d 494, 503-06, 105 S. Ct. 1487, 1493-95.) In fact, in certain circumstances procedural due process may require that this pretermination hearing include the opportunity to present witnesses and to confront and call into question the sufficiency of the government's basis for the intended deprivation of the individual's property right. (See *Goldberg v. Kelly* (1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011; see also *Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 548, 84 L. Ed. 2d 494, 508, 105 S.

Ct. 1487, 1496 (Marshall, J., concurring); 470 U.S. 532, 558, 84 L. Ed. 2d 494, 410, 105 S. Ct. 1487, 1498 (Brennan, J., concurring).) Procedural due process is a flexible concept that eludes rigid and formalistic application. Nevertheless, the "root requirement" of due process mandates "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." (Emphasis in original.) 470 U.S. 532, 542, 84 L. Ed. 2d 494, 503-04, 105 S. Ct. 1487, 1493, quoting *Boddie v. Connecticut* (1971), 401 U.S. 371, 379, 28 L. Ed. 2d 113, 119-20, 91 S. Ct. 780, 786.

■ Assuming that Interstate's MBE recertification is a protected property interest, Interstate was entitled to a hearing to respond to the city's conclusions prior to revocation of Interstate's MBE certification. MBE certification is an extremely important asset to a minority business, and it is questionable whether a minority enterprise would be able to remain a viable competitor in its industry if MBE certification is revoked. (See, *e.g., Federal Minority Business Development Program: Hearings Before the Senate Comm. on Small Business,* 98 Cong., 1st Sess. (1983); Note, *The Public Works Employment Act of 1977 and Minority Contracting,* 28 Cath. U. L. Rev. 121 (1978); see also City of Chicago Executive Order 85—2 preamble (April 3, 1985); 49 C.F.R. secs. 23.1, 23.43 (1985).) Given these considerations, the city's interest to immediately terminate fraudulent or non-*bona fide* MBE certifications, and the administrative burden of a pretermination hearing, would not appear to clearly outweigh the substantial private interest of Interstate in this case.

■ Whether the pretermination hearing here should have included an opportunity to "present plausible explanations" or "dispute facts" is a question not properly considered in the instant appeal. (*Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 545-48, 84 L. Ed. 2d 494, 506-08, 105 S. Ct. 1487, 1494-95.) It remains that Interstate in any event was entitled to a hearing and never received one. As alleged in Interstate's complaint and its supporting documents, Interstate received nothing more than an initial statement of the city's general "reasons" for denial after Interstate's MBE certification was revoked. Interstate later received a more detailed statement of reasons only when it disputed the city's determination. Interstate was never afforded an opportunity to respond to the city's concerns before it was denied MBE recertification. In addition, no hearing of any kind or degree was ever undertaken, either prior or subsequent to the city's "final" decision to revoke Interstate's MBE certification. Under these circumstances, we conclude that Interstate's complaint is sufficient to tend to establish that the

city's actions deprived Interstate due process of law, and that Interstate is likely to succeed on the merits of its complaint against the city. See *Cornelius v. La Croix* (E.D. Wis. 1986), 631 F. Supp. 610.

Furthermore, it is readily apparent that Interstate will suffer irreparable injury if a preliminary injunction is not issued. Interstate alleged that the city's failure to recertify it as an MBE caused Interstate to lose substantial business opportunities, including the opportunity to serve as a certified minority subcontractor with regard to several pending city of Chicago contracts. A loss of business due to the city's alleged unjustified action is sufficient to show irreparable injury. (See *Stout v. Reed* (1980), 91 Ill. App. 3d 123, 414 N.E.2d 211.) In view of minority businesses' needs for governmental aid in order to be able to compete effectively for government contracts, it is evident that a loss of such business could have a particularly adverse impact upon the viability of a minority business such as Interstate.

██ The city claims that Interstate is not entitled to preliminary injunctive relief because Interstate has not exhausted the administrative remedy of an appeal to USDOT. The argument does not persuade. The city's program, and thus its recertification of Interstate as an MBE, applies to all contracts of the city of Chicago, not simply those funded by USDOT monies. As a result, Interstate could not "appeal" to USDOT with respect to the city's determination that Interstate is not an MBE and therefore should be denied the opportunity to bid, as an MBE, on city contracts not funded by USDOT.

Furthermore, an "appeal" to USDOT would not permit Interstate a hearing wherein it could respond to the city's reasons for decertification, nor would it permit a stay of the city's decertification prior to USDOT's decision in the controversy between the parties. Thus the "appeal" would be futile and would fail to provide adequate relief. See *Northwestern University v. City of Evanston* (1978), 74 Ill. 2d 80, 383 N.E. 2d 964; *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737; *Sanders v. City of Springfield* (1985), 130 Ill. App. 3d 490, 474 N.E.2d 438.

USDOT's procedures for an appeal from denial of certification are set forth in section 23.55 of the agency's MBE regulations. (49 C.F.R. sec. 23.55 (1985).) Under this section, a company which is denied certification, or recertification, may "appeal" the denial to USDOT "in writing, signed and dated." (49 C.F.R. sec. 23.55(a) (1985).) Once the appeal is lodged, the "Secretary [of USDOT] ensures that a prompt investigation is made pursuant to prescribed DOT title VI investigation procedures." (49 C.F.R. sec. 23.55(b) (1985).) USDOT considers that the denial of certification, by USDOT or the municipal recipient

of federal funds, "shall be final, for that contract and other contracts being let by the [municipal] recipient at the time of the denial of certification." (49 C.F.R. sec. 23.53(g) (1985).) The agency's regulations provide that a company denied MBE certification may apply for certification only for future contracts, provided the company "correct[s] deficiencies in their ownership and control." 49 C.F.R. sec. 23.43(g)(1985).

Appendix A to the USDOT MBE regulations states the agency's procedures once a firm appeals from a denial of certification or recertification. Under USDOT's policy, "Once a [municipal] recipient [of USDOT funds] has made a final decision on certification, that determination goes into effect immediately with respect to the recipient's DOT-assisted contracts (see sec. 23.53(g)). If a firm that has been denied certification or has been decertified appeals the recipient's action to the Department under sec. 23.55 ***, the recipient's action remains in effect until and unless the Department makes a determination under sec. 23.55 reversing the recipient's action. The recipient's action is not stayed during the pendency of a sec. 23.55 appeal." 49 C.F.R. sec. 23 app. A, at 149 (1985).

As an example, USDOT states that "if a recipient has decertified a firm and the firm appeals the decertification to DOT, the firm remains ineligible for consideration as a disadvantaged business with respect to the recipient's DOT-assisted programs until and unless the Department finds that the firm is eligible. *** The Department has followed this policy and interpretation of its regulations consistently under the existing rule, and we will continue to do so ***." 49 C.F.R. sec. 23 app. A, at 149 (1985).

USDOT justifies this policy on the ground that it "believes that the award of contracts to ineligible firms is a very serious blow to the integrity of the Department's program." (49 C.F.R. sec. 23 app. A, at 149 (1985).) As a result, under USDOT's interpretation of its own regulations, section 23.55 "does not however authorize the Department to maintain a firm's certification in effect pending the outcome of the sec. 23.55 Appeal, when the recipient has refused to certify or has decertified the firm." 49 C.F.R. sec. 23 app. A, at 150 (1985).

As these statements of USDOT interpretation of its regulations make clear, an attempt by Interstate to "appeal" to USDOT would not afford Interstate procedural due process, and therefore would serve no useful or meaningful method for Interstate to redress its alleged injury. USDOT regulations and policy provide for no hearing wherein Interstate could present its claim that it is entitled to recertification. Instead they provide only that Interstate may submit its

claim "in writing." (49 C.F.R. sec. 23.55(a) (1985).) In addition, no specification is made that the City must submit its position in writing to USDOT or that Interstate is entitled to a statement of the city's specific reasons for denial. The regulations further state no standard of review for an appeal to USDOT, not time limitations as to when USDOT must make a decision on the MBE's appeal, and no specified procedure for an appeal from the decision of USDOT, when that decision is announced. Furthermore, no provision is made for a stay of decertification pending USDOT review. In fact, USDOT has expressly and explicitly adopted the policy position that a stay is not proper in these circumstances. See 49 C.F.R. sec. 23 app. A, at 149 (1985).

In view of these considerations, we conclude that Interstate's complaint demonstrated that it has no adequate administrative remedy in an "appeal" to USDOT to redress its alleged injury, such that it is entitled to preliminary injunctive relief. For the same reasons as stated above, we also find no legal basis for the city's claim that USDOT has "primary jurisdiction" over Interstate's claims against the city. See *Car Carriers, Inc. v. Ford Motor Co.* (N.D. Ill. 1984), 583 F. Supp. 221; *Steward v. Allstate Insurance Co.* (1980), 92 Ill. App. 3d 637, 415 N.E.2d 1206.

The city's other arguments to support its view that the trial court properly denied Interstate's request for a preliminary injunction are equally insufficient to deny Interstate the interim relief it requests.

■■ Since Interstate's complaint challenges the actions of the city of Chicago in the city's MBE set-aside program, and does not challenge the constitutionality or legality of the actions, procedures, or regulations of USDOT *per se*, USDOT has no material or substantial interest in the outcome of Interstate's litigation against the city of Chicago and is not a necessary and indispensable party to the instant action. (See, *e.g., Lakeview Trust & Savings Bank v. Estrada* (1985), 134 Ill. App. 3d 792, 480 N.E.2d 1312, *appeal denied* (1985), 108 Ill. 2d 567.) Interstate's complaint is not fatally deficient because it does not include a copy of Interstate's application for recertification, as Interstate challenges the city's failure to afford Interstate a hearing, rather than the city's factual determination that Interstate is not an MBE; further, any assumed deficiency could be remedied by amendment to Interstate's pleading. (See, *e.g., Williams v. Northwestern University* (1986), 147 Ill. App. 3d 374, 497 N.E.2d 1226.) Because the trial court did not allow Interstate's request for a preliminary injunction, the city's claim that Interstate should have offered to post bond is misguided. See Ill. Rev. Stat. 1985, ch. 110, par. 11—103.

■■ The fact that Interstate did not verify its motion for preliminary injunction is immaterial since the motion is not a "subsequent pleading." (See Ill. Rev. Stat. 1985, ch. 110, par. 2—605.) Nor is Interstate's failure to include a transcript of the parties' arguments before the trial court sufficient cause to affirm the trial court's ruling since the appeal presents legal issues decided without an evidentiary hearing. (See *Venturini v. Affatato* (1980), 84 Ill. App. 3d 547, 405 N.E.2d 1093.) Whether Interstate's attorney should be disqualified on the ground that he may be a witness in the cause is more properly a matter for the trial court's consideration on remand (see generally, *e.g.,* Leibowitz, *The Illinois Lawyer as Witness,* 74 Ill. B.J. 602 (1986)); this court has already denied the city's disqualification motion on appeal and need not reconsider it herein.

The city contends that the public will suffer if preliminary injunctive relief is granted in the instant cause because such relief will allow ineligible firms to obtain contracts which should have been awarded to *bona fide* MBEs. The public's legitimate interest in assuring that programs for minorities are not usurped by unqualified or "sham" firms is not compromised, in our opinion, when an administering municipality is preliminarily enjoined from denying recertification to a company which the municipality earlier found to be an MBE, until the court determines whether the municipality, in accordance with due process, should have afforded the MBE an opportunity for a hearing to respond to the city's determinations. The essence of procedural due process is to afford the city the opportunity to take a closer look at the circumstances of a particular MBE's situation prior to revocation of the MBE's certification, in order to promote the concern that qualified companies benefit from the city's laudable program whereby the city provides invaluable assistance to the efforts of minority business enterprises to compete effectively in their respective industries.

For the reasons stated, the order of the circuit court of Cook County is reversed, and the cause is remanded with directions that the court enter an order for the preliminary injunctive relief sought by Interstate in the case at bar.

Reversed and remanded with directions.

LINN, P.J., and McMORROW, J., concur.