INTERSTATE MATERIAL CORPORA-TION, an Illinois corporation, on its own behalf and on behalf of all others similarly situated, Plaintiff–Appellant,

v.

CITY OF CHICAGO, et al., Defendants–Appellees.

No. 87–2020.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1988.

Decided June 3, 1988.

Rochelle J. Brinnick, Cook Partners Law Office, Ltd., Chicago, Ill., for plaintiff-appellant.

Edward J. Lewis, II, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, CUDAHY and POSNER, Circuit Judges.

CUMMINGS, Circuit Judge.

■ Plaintiff Interstate Material Corporation ("Interstate") challenges the district court's order that, pursuant to *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483, denied Interstate's motion to dissolve the stay of federal proceedings pending the resolution of a parallel action in state court. The decision to stay federal proceedings because of concurrent state litigation remains one committed to the discretion of the district court. *Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 665, 98 S.Ct. 2552, 2558, 57 L.Ed.2d 504. Thus the only question on appeal is whether the district court abused its discretion. *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 695 (7th Cir.1985). We hold that it did not and affirm the judgment.

## I

■ Although the only substantive question on appeal is whether the district court abused its discretion, before reaching that question we must determine whether we have jurisdiction to do so. Interstate asserts that we have jurisdiction under 28 U.S.C. § 1292(a)(1). The City defendants [1] agree. Despite this agreement between the parties, we have an independent responsibility to determine whether we have subject matter jurisdiction, *Wilson v. Civil Town of Clayton*, 839 F.2d 375, 384 (7th Cir.1988), and we disagree with the jurisdictional statement of the parties.

Section 1292(a)(1) grants the courts of appeal jurisdiction of appeals from "inter-

locutory orders" "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." While the list of appealable actions a district court might take regarding an injunction appears comprehensive, it does not include the non-action taken here. Although Interstate titled its motion "Motion to Dissolve Stay and for Preliminary Injunction," the challenged order in its entirety states:

> For the reasons stated in this court's 6–26–86 order, Plaintiff's motion to dissolve the stay of proceedings is denied. As stated previously in the 6–26–86 order, the advanced status of the plaintiff's prior parallel state action requires this court to stay the instant proceedings until the resolution of the state case.

The order contains no disposition of, or even mention of, plaintiff's motion for a preliminary injunction; yet Interstate argues that this order "effectively denied the preliminary injunctive relief" it sought. Acceptance of Interstate's argument would defeat the intent and effect of the stay. The order deferred to the state court proceedings, in which Interstate had been granted a preliminary injunction by the Illinois Appellate Court hearing an interlocutory appeal. The district court's denial of Interstate's motion to dissolve the stay was a refusal to consider any issue on the merits of the case. It was not a collateral order concerning an injunction appealable under § 1292(a)(1).

■ The order denying the motion to dissolve the stay, however, is itself an appealable order. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 11–13, 103 S.Ct. 927, 934–35, 74 L.Ed.2d 765. An order denying a motion to dissolve a stay is equivalent to an order granting a stay of litigation and the Supreme Court in *Moses Cone* held that a district court order granting a stay of litigation pursuant to *Colorado River* is an appealable order. *Id.* Compare *Gulf-*

---

1. Interstate's state action named the City of Chicago, Mayor Harold Washington and seven City officials who administered the City's Minority Business Enterprise ("MBE") program as defendants. Collectively they are referred to as the City defendants.

*Stream Aerospace Corp. v. Mayacamas Corp.,* — U.S. —, 108 S.Ct. 1133, 99 L.Ed.2d 296 (holding that a district court order denying a motion to stay or dismiss because of the pendency of similar litigation in state court is not immediately appealable under Section 1291 or Section 1292(a)(1)). The Court found that an order granting a stay pursuant to *Colorado River* comes within the small class of decisions excepted from the final judgment rule under *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528. *Moses Cone,* 460 U.S. at 11, 103 S.Ct. at 934. Such an order meets the requirements of *Cohen* because it conclusively determines the disputed question, resolves an important issue completely separate from the merits of the action, and is effectively unreviewable on appeal from a final judgment. *Id.* at 11–12, 103 S.Ct. at 934–35. We therefore have jurisdiction to consider Interstate's appeal insofar as it concerns the district court's refusal to dissolve the stay.

## II

 *Colorado River,* as explained and expanded by *Moses Cone,* controls here. In *Colorado River* the Court emphasized "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," 424 U.S. at 817, 96 S.Ct. at 1246, but also recognized that when there is concurrent state court litigation "exceptional" circumstances may exist that permit a federal court to refrain from exercising that jurisdiction "for reasons of wise judicial administration." [2] *Id.* at 818, 96 S.Ct. at 1246.

## A

 As an initial requirement, the concurrent state and federal court proceedings

must be parallel. If they are not, the *Colorado River* doctrine is inapplicable. See, e.g., *Harris v. Pernsley,* 755 F.2d 338, 346 (3d Cir.1985); *Crawley v. Hamilton County Comm'rs,* 744 F.2d 28, 31 (6th Cir.1984). Interstate argues that its state and federal actions are not parallel because the parties and issues in each suit are different. The two actions involve different defendants and potentially involve different plaintiffs. In its state action Interstate names as defendants the City of Chicago, Mayor Harold Washington, and seven city officials involved in the administration of Chicago's MBE program. Interstate's federal action again names the City of Chicago and six of the seven individual defendants, but also names Elizabeth Dole in her official capacity as Secretary of the United States Department of Transportation ("USDOT") and two federal agencies: USDOT and the Urban Mass Transportation Administration ("UMTA"). In addition, Interstate filed the state action on behalf of itself, but filed the federal action on behalf of itself and two classes: (1) the "National Class," including "all businesses in the United States which are at least 51% minority owned, which are controlled by at least one of the minority owners, and which are or may be subject to the regulations of the [USDOT] set forth in 49 C.F.R., Part 23, and (2) the "Chicago Class," including "all businesses which now seek or have sought since January 1, 1986 to do business with the City of Chicago, which are at least 51% minority owned and are controlled by at least one of the minority owners, and which have sought since January 1, 1986 or will seek to be certified or recertified as [MBEs] by the City of Chicago."

Interstate also argues that the issues in the two cases differ. It contends that the state action seeks relief only from the 1985 denial of Interstate's recertification as a

---

**2.** The Court reached this conclusion, creating the *Colorado River* doctrine, after it recognized that none of the traditional abstention doctrines applied. Abstention is generally confined to three categories of cases: (1) cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law; (2) cases presenting difficult questions of state

law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar; and (3) cases where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings. The case before it fit none of these categories. *Colorado River,* 424 U.S. at 814–16, 96 S.Ct. at 1244–45.

minority business enterprise while the federal action "seeks relief against both city and federal officials based on the different perspective created by conduct and events occurring in 1986."

Interstate is correct in its assertion that differences exist. However, the requirement is of parallel suits, not identical suits. A "suit is 'parallel' when substantially the same parties are contemporaneously litigating substantially the same issues in another forum," *Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228, 1229 n. 1 (7th Cir.1979); see also *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 165, 81 L.Ed. 153, and the parties and issues in Interstate's state and federal actions are substantially the same.

The addition of the federal defendants in the federal suit by itself does not destroy the parallel nature of the cases. If it did, parties could avoid the doctrine of *Colorado River* by the simple expedient of naming additional parties. *Lumen Constr.*, 780 F.2d at 695. Similarly, the parallel nature of the suits is not defeated by Interstate's attempts to certify two classes as plaintiffs in the federal action because the relief Interstate requests in its state action would benefit not only Interstate but all persons it argues would be part of the "Chicago Class" and some members of the "National Class." As relief in the state action Interstate requests a temporary and permanent injunction concerning its own MBE status and $7,500,000 as damages, but it also requests declarations that the actions of the City defendants violate the United States and Illinois constitutions (Counts I and III) as well as sections 23.1, 23.7 and 25.53 of Volume 49 of Code of Federal Regulations (Count II), and ultimately requests the court to "[i]ssue a mandatory injunction requiring defendants to establish uniform procedures, consistent with the principles of due process of law, for decertification of certified minority business enterprises and for appeal from decertification, in accordance with Section 5(g) of Executive Order 85-2." Thus although the members of the possible class in the federal action are technically not represented in the state action, the relief requested will benefit them. See *Canaday v. Koch*, 608 F.Supp. 1460, 1475 (S.D.N.Y. 1985).

After "a painstaking comparison of the federal and state complaints" and the observation "that 32 of the 39 key paragraphs in plaintiff's state court complaint appeared verbatim in its federal court complaint" the district court found that "[n]otwithstanding the addition of federal defendants in this case, ... the federal and state actions are sufficiently parallel to warrant a stay." This finding was not an abuse of discretion.

B

The Court in *Colorado River* listed four factors to be considered in determining whether to defer to the concurrent jurisdiction of a state court: (1) which, if either, court first assumed jurisdiction over property, (2) the inconvenience of a federal forum, (3) the desirability of avoiding piecemeal litigation, and (4) the order in which jurisdiction was obtained by the concurrent forums. *Colorado River*, 424 U.S. at 818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483. As we noted in *Lumen Construction*, 780 F.2d at 694–95, the Supreme Court and this Court have since identified additional factors to be weighed in the balance: (1) the source of governing law, state or federal, *Moses H. Cone*, 460 U.S. at 23–26, 103 S.Ct. at 941–942, (2) the adequacy of the state court action to protect the federal plaintiff's rights, *id.* at 26–28, 103 S.Ct. at 942–43, (3) the relative progress of the state and federal proceedings, *id.* at 21–23, 103 S.Ct. at 939–41, (4) the presence or absence of concurrent jurisdiction, *Will*, 437 U.S. at 666, 98 S.Ct. at 2559, (5) the availability of removal, *Microsoftware Computer Systems, Inc. v. Ontel Corp.*, 686 F.2d 531, 537 (7th Cir.1982), overruled on other grounds by *GulfStream Aerospace*, — U.S. ——, 108 S.Ct. 1133, 99 L.Ed.2d 296, and (6) the vexatious or contrived nature of the federal claim, *Calvert Fire Ins.*, 600 F.2d at 1234, noted with approval in *Moses Cone*, 460 U.S. at 17 n. 20, 103 S.Ct. 937 n. 20. "[N]o one factor is necessarily deter-

minative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. at 1236.

An examination of several of the relevant factors indicates that the district court did not abuse its discretion when it determined that the balance favored staying its jurisdiction. Two of the factors expressly listed in *Colorado River* apply to the circumstances of this case: (1) the desirability of avoiding piecemeal litigation and (2) the order in which jurisdiction was obtained by the concurrent forums. Both favor imposition of the stay. First, from the preceding discussion establishing the parallel nature of the suits it is clear that, as in *Microsoftware*, 686 F.2d at 538, "there would be a grand waste of efforts by both the courts and parties in litigating the same issues regarding the same [policies] in two forums at once." Second, Interstate filed the state action on October 3, 1985 and filed the federal action on May 2, 1986. Thus the state court obtained jurisdiction seven months before the federal court. In balancing this factor it is appropriate to note that Interstate filed both actions and chose to file in state court first.

Two of the additional factors identified in *Moses Cone* and subsequent cases also apply: (1) the relative progress of the state and federal proceedings and (2) the vexatious or contrived nature of the federal claim. Again, both favor imposition of the stay. At the time the district court reviewed Interstate's motion, the state action had already progressed to the Illinois Appellate Court, which had reversed the trial court and remanded with directions that it enter an order granting the preliminary injunctive relief sought by Interstate. *Interstate Materials Corp. v. City of Chicago, et al.*, 150 Ill.App.3d 944, 103 Ill.Dec. 593, 602, 501 N.E.2d 910, 919 (1986). Thus at the time Interstate filed its Motion to Dissolve Stay and for Preliminary Injunction in federal court, the state trial court had already denied and the state appellate court granted Interstate substantially the same relief it sought from the federal court if the stay was dissolved.

Second, the federal suit could be considered both vexatious and contrived. Interstate filed both suits within seven months of each other seeking substantially the same relief from substantially the same parties. Without presuming Interstate's motives, we see no reason why all claims and all parties could not have been, and still could not be, part of one suit.

Although all of the applicable factors favor staying the federal action, this finding is not dispositive. "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses Cone*, 460 U.S. at 16, 103 S.Ct. at 937. This finding does, however, demonstrate that the district court did not abuse its discretion when it stayed the federal proceeding.

Finally, this case closely resembles *Lumen Construction*, which stayed a federal suit pending the resolution of a similar suit in state court. In *Lumen Construction* we approved the stay for the following reasons equally applicable here (780 F.2d at 696–698):

1. The claims in the federal suit could be mooted by the prior pending state litigation.

2. If the plaintiff wished, it could add the federal defendants in the state suit or otherwise "has only itself to blame" (780 F.2d at 696).

3. It is immaterial that civil rights claims appear in both actions.

4. The state court proceeding was filed first and advanced further.

5. A stay would avoid "the possibility of duplicative litigation, tension and controversy between the federal and state forums, hurried and pressured decision-making, and confusion over the disposition of property [here minority] rights" (780 F.2d at 697, quoting and following *Arizona v. San Carlos Apache Tribe*, 463 U.S. 545, 569, 103 S.Ct. 3201, 3215, 77 L.Ed.2d 837).

6. State courts will be presumed to adjudicate plaintiff's claims fairly.

7. A stay permits the advantage of bringing the case back before the same federal judge if the need should arise.

8. A stay, rather than a dismissal without prejudice, is the appropriate procedural mechanism for a district court to employ in deferring to a parallel state court proceeding under the *Colorado River* doctrine.

In *Lumen Construction* the panel also remarked that if both state and federal proceedings were allowed to proceed, inconsistent rulings could jeopardize the appearance and actuality of justice and that duplicative lawsuits are often commenced for unworthy reasons, not only jeopardizing judicial economy but also the legitimacy of the court system and possibly resulting in conflicting adjudications. *Id.* at 693–694.[3] This concern is heightened in this case because if the district court dissolved the stay it probably would deny the preliminary injunction on the merits[4] so that the City defendants would be enjoined by the state court but not by the federal court.

### III

The parties have not informed us of the present status of the litigation in the state trial court except to say that substantial progress has taken place (City Defendants' Br. 26). The stay is only in effect "until resolution of the state case." This leads us to conclude that Judge Bua should require the parties to keep him advised of the progress of the state litigation at least every six months in the event that it should become advisable to lift the stay.

Affirmed with directions.

---

**3.** See also Pound, *The Causes of Popular Dissatisfaction with the Administration of Justice* (1906), reprinted in 35 F.R.D. 273; Note, *Federal Court Stays and Dismissals in Deference to Parallel State Court Proceedings: The Impact of Colorado River*, 44 U.Chi.L.Rev. 641, 643–644 (1977).

**4.** Based on the recent decision of this Court in *Baja Contractors, Inc. v. City of Chicago*, 830 F.2d 667 (7th Cir.1987), the likelihood of success on the merits is not strong. In *Baja Contractors* we held that the procedures employed by the City of Chicago to deny another minority business certification did not violate due process. Therefore the possibility of inconsistent rulings on the preliminary injunction is very real.