**BIBLE TRUTH CRUSADE, a not for profit corporation; D.J. Herman, Ida Herman, Plaintiffs,**

v.

**CITY OF BLOOMINGTON, a municipal corporation; Donald Tjaden; Vincent Quevedo; Thomas Hamilton; David Stanczak; Herbert Wojahn, Defendants.**

No. 88–3293.

United States District Court,
C.D. Illinois,
Springfield Division.

March 29, 1989.

Marcia F. Straub and Gary Morris, Peoria, Ill., for plaintiffs.

William A. Allison, Bloomington, Ill., for defendants.

## OPINION

RICHARD MILLS, District Judge:

There is parallel and identical litigation to this case now pending in state court.

We treat this matter *sua sponte.*

In their memorandum of law arguing against Defendants' motion to dismiss, Plaintiffs state: "The Plaintiffs in this cause are seeking to 'remove' this case from the state court where the proceedings were timely commenced to the Federal Court which also has jurisdiction." Therefore, we must decide whether we should allow Plaintiffs to "remove" this action or whether this litigation should be stayed in light of the pending state litigation.

Plaintiffs object to a stay. Defendants do not.

### I—Facts

As pled in the complaint, the facts are as follows. Bible Truth Crusade (Crusade) is a not for profit corporation and D.J. Herman and Ida Herman are officers thereof. In June of 1985, these Plaintiffs allegedly entered into an oral contract with the city of Bloomington, Illinois. The city had approached Plaintiffs with a proposed plan to demolish, salvage, and remove a building on certain premises in Bloomington owned by Crusade. This building was known as the Old Emerson School.

Under the terms of the oral contract, the city agreed to provide a $50,000 interest free loan and an additional $20,000 to complete the demolition and salvage work. The city agreed that after completion of the salvage work the premises could be used for purposes such as a senior citizens' housing development or single family dwellings. Further, Plaintiffs were led to believe by Donald Tjaden, Director of Urban Development for Bloomington, that if Plaintiffs chose to subdivide the land for single family dwellings, they could earn $9,000 per sale for the sale of eight lots.

Based on these agreements and representations, Plaintiffs embarked on the demolition plan. Plaintiffs allege that once the project began, Defendants repeatedly changed the terms of the agreement and generally attempted to frustrate the project's completion.

At the beginning of the demolition project, Crusade hired D.J. Herman to act as general contractor for the project. It is alleged that in September of 1985, Defendant Tjaden interfered with the business relationship between Crusade and Herman by forcing the Crusade to replace Herman as the general contractor.

Plaintiffs further allege that once the project began, the city engaged in the practice of "down zoning" the Plaintiffs' property. Defendants passed a zoning ordinance at a city council meeting which affected Plaintiffs' property without providing timely notice of the meeting to Plaintiffs.

Finally, Plaintiffs allege that Defendant Tjaden interfered with their business relationship with Champion Federal Savings and Loan by directing Champion not to release funds for the project. The project remains unfinished because of the city's refusal to release such funds.

Counts I, II, III, and IV of the complaint are brought pursuant to 42 U.S.C. § 1983 resulting from the Defendants' actions in

failing to comply with the terms of the oral contract, interfering with D.J. Herman's position as general contractor of the project, and "down zoning" the Plaintiffs' property without adequate notice to Plaintiffs. Count V is a breach of contract action. Count VI alleges fraud. Count VII is a common-law action for detrimental reliance. Counts VIII and IX allege an action for intentional interference with Plaintiffs' right to contract.

In all relevant respects, the complaints filed in the state and federal courts are the same.

## II—Analysis

In *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court listed four factors to be considered in determining whether a federal court may defer to the concurrent jurisdiction of a state court: (1) which court first assumed jurisdiction over property; (2) the inconvenience of a federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums. *Id.* at 818, 96 S.Ct. at 1246. Since *Colorado River,* the Supreme Court and the Seventh Circuit have identified additional factors which we must consider, including: (1) the source of governing law, state or federal; (2) the adequacy of the state court action to protect the federal plaintiff's rights; (3) the relative progress of the state and federal proceedings; (4) the presence or absence of concurrent jurisdiction; (5) the availability of removal; and (6) the vexatious or contrived nature of the federal claim. *Interstate Material Corp. v. City of Chicago,* 847 F.2d 1285, 1288 (7th Cir.1988). "[N]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River,* 424 U.S. at 818–19, 96 S.Ct. at 1247.

Two of the four factors listed in *Colorado River* are applicable here—the desirability of avoiding piecemeal litigation and the order in which the concurrent forums obtained jurisdiction. Both fall squarely in favor of imposing a stay. First, considering the two actions are exactly the same, "there would be a grand waste of efforts by both the courts and parties in litigating the same issues regarding the same [alleged] contract in two forums at once." *Microsoftware Computer Systems, Inc. v. Ontel Corp.,* 686 F.2d 531, 538 (7th Cir. 1982). We see no sense in duplicating work which may be done competently in Plaintiffs' chosen forum.

Second, Plaintiffs filed the state court action on May 23, 1986, and filed the federal complaint November 14, 1988. Thus, the state court obtained jurisdiction *two and one-half years* before this Court. Further, it was Crusade and the Hermans who filed both actions and chose the state court first. *See Interstate Material,* 847 F.2d at 1289 (allowing stay of federal court proceedings where plaintiff had filed state court action seven months before filing federal court action). What Plaintiffs attempt now simply amounts to forum shopping.

Plaintiffs argue that the time frame should not be weighted heavily because the complaint was originally filed in state court by attorney Jack Vieley who has since withdrawn from representing Plaintiffs. Plaintiffs' new counsel states that soon after entering her appearance for Plaintiffs, the federal complaint was filed. This is of no matter. Plaintiffs must accept the actions of their chosen counsel. So too are counsel bound by the actions of previously retained counsel.

With respect to the additional factors listed above, several are relevant to the instant action. First, the source of governing law is predominantly that of the state. The Illinois law of contracts and fraud will be applied to adjudicate the main issues involved in this action. The validity of the federal claims—pursuant to section 1983— are wholly dependent upon the outcome of the issues governed by state law. Thus, this cause is similar to *Lumen Construction, Inc. v. Brant Construction Co.,* 780 F.2d 691 (7th Cir.1986).

In *Lumen,* the court held that although civil rights complaints command special

protection from the federal courts, the federal action may be stayed where the decision on the civil rights claims must wait for resolution of an underlying contractual dispute. *Id.* at 696. That is the precise situation involved in the instant case.

Further, the state court action is adequate to protect the federal Plaintiffs' rights. It is well settled that state courts have jurisdiction to hear actions brought under section 1983. Because the section 1983 claims depend wholly on the underlying state law claims, the state court is in an equal, if not better, position to adjudicate the section 1983 claims.

However, Plaintiffs argue that they may not receive a fair adjudication of their claims in state court because the individual Defendants are longtime employees of the City of Bloomington, Illinois, where the state court action is pending. Plaintiffs' fears are unfounded. State courts are presumed to adjudicate plaintiffs' claims fairly. *Interstate Material*, 847 F.2d at 1290. Plaintiffs have shown no objective evidence that they have been or will be treated unfairly in the state court. Further, any fears that Plaintiffs will receive an unfair trial in Bloomington may be allayed by an application for a change of venue pursuant to Ill.Rev.Stat. ch. 110, ¶ 2–1001(a)(2) (A change of venue may be secured "[w]here any party or his or her attorney fears that he or she will not receive a fair trial in the court in which the action is pending, because the inhabitants of the county are or the judge is prejudiced against him or her, or his or her attorney, or the adverse party has an undue influence over the minds of the inhabitants.").

Finally, the federal action could be considered both vexatious and contrived. Plaintiffs filed the same suit here, against the same parties, after two and one-half years of litigation in state court. As the court stated in *Interstate Material:* "Without presuming [Plaintiffs'] motives, we see no reason why all claims and all parties could not have been, and still could not be, part of one suit." *Interstate Material*, 847 F.2d at 1289.

This cause is similar to both *Interstate Material* and *Lumen* in that: (1) the claims in the federal suit could be mooted by the prior pending state litigation; (2) it is immaterial that civil rights claims appear in both actions; (3) the state court proceeding was filed first; (4) a stay would avoid the possibility of duplicative litigation, tension, and controversy between the federal and state forums, and hurried and pressured decisionmaking; (5) state courts are presumed to adjudicate plaintiffs' claims fairly; and (6) a stay permits the advantage of bringing the case back before the same federal judge if the need should arise. *Id.* at 1289–90.

In *Lumen Construction* the panel also remarked that if both state and federal proceedings were allowed to proceed, inconsistent rulings could jeopardize the appearance and actuality of justice and that duplicative lawsuits are often commenced for unworthy reasons, not only jeopardizing judicial economy but also the legitimacy of the court system and possibly resulting in conflicting adjudications.

*Id.* at 1290 (citing *Lumen*, 780 F.2d at 693–94).

Though all the applicable factors weigh in favor of ordering a stay of this litigation, our inquiry is not finished. We must balance the above mentioned considerations against our "unflagging obligation" to exercise jurisdiction over federal claims, and the balance is weighted heavily in favor of exercising jurisdiction. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). However, considering how ponderously the factors tilt on the side of a stay and having compared the instant cause to Seventh Circuit precedent—most notably *Interstate Material* and *Lumen*—we conclude a stay should be entered.

*Ergo,* this cause is hereby STAYED until such time as the state litigation described herein is concluded. At such time as the state litigation concludes, either party may move the Court to lift the stay and proceed with this litigation. Should the state litiga-

tion conclude and moot the federal litigation, the Plaintiffs shall notify this Court within 30 days thereafter so that this cause may be dismissed and the case closed.

All pending motions are DENIED as moot.

The case will be CLOSED for administrative purposes only.

IT IS SO ORDERED.