**In re CHICAGO FLOOD LITIGATION.**

No. 93 C 1214.

United States District Court,
N.D. Illinois, E.D.

May 6, 1993.

John B. McCabe, Kurt D. Baer, Clausen Miller Gorman, Caffrey & Witous, P.C., Chicago, IL, for American Home Assur. Co.

Mark S. Grotefeld, Robins, Kaplan, Miller & Ciresi, Chicago, IL, Terrence R. Joy, Richard B. Allyn, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for Dayton Hudson Corp., Filene's Basement, Inc., Sara Creek Property Co. BV.

Douglas M. Reimer, John T. Shriver, McDermott, Will & Emery, Duane M. Kelley, Stephen C. Schulte, Timothy J. Rooney, Peter C. McCabe, III, Winston & Strawn, Chicago, IL, for Great Lakes Dredge & Dock Co.

Theodore R. Tetzlaff, Richard C. Bollow, Russ M. Strobel, Julie Reynolds Shaw, Jenner & Block, Alan W. Brothers, Hubert O. Thompson, Lori A. Owens, Carney & Brothers Ltd., Kelly R. Welsh and Susan S. Sher, Corp. Counsel, Susan R. Lichtenstein, Deputy Corp. Counsel, Gail A. Niemann, Chief Asst. Corp. Counsel, City of Chicago, Chicago, IL, for City of Chicago.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Plaintiffs in these four consolidated cases [1] sue defendants Great Lakes Dredge & Dock Company ("Great Lakes") and the City of Chicago ("the City") to recover for damages incurred when the Chicago River broke through a breach in a freight tunnel lying beneath the river and then flooded a tunnel system underneath the city's business district. The City moves to dismiss or stay this action pending the outcome of related state court litigation.

## BACKGROUND

A year ago, widescale calamity struck Chicago for the second time in barely a century. The culprit this time, however, was not the legendary cow's kick of a lantern. A piling allegedly ruptured the bottom of the Chicago River. Once the plug was pulled, the river, like water draining from a tub, flowed into a tunnel system that ran beneath its bed and throughout Chicago's financial and business center.

The day after the flood, litigation began. Twenty-nine lawsuits were quickly filed in the Circuit Court of Cook County, Illinois, where orders were entered to consolidate the cases before a single judge and to certify a class. The City moved to dismiss the twenty-nine claims on one ground, among others, that the plaintiffs had suffered only economic loss. *See* Dayton Hudson Br. at 2. The state court judge dismissed the suits that contained claims for only economic loss. *Id.* at 2. From February 26, 1993 until April 13, 1993, a group of additional claims for real property damage, primarily insurance subrogation cases, were filed in state court. *Id.* at 3; American Home's Br. at 5. As a result, the state court recently modified its case management orders to accommodate the property damage plaintiffs who have opted-out of the class action. *Id.*

On February 26, 1993, the same day that the new property damage cases were initi-

1. The four cases include: *Dayton Hudson Corp. v. Great Lakes Dredge & Dock Co., et al.,* No. 93 C 1214; *Filene's Basement, Inc. v. Great Lakes Dredge & Dock Co., et al.,* No. 93 C 1215; *Sara Creek Property Company B.V. v. Great Lakes Dredge & Dock Co., et al.,* No. 93 C 1216; *American Home Assurance Co. v. Great Lakes Dredge & Dock Co., et al.,* No. 93 C 1217. The court previously dismissed two related, consolidated cases for want of subject matter jurisdiction: *American Alliance Insurance Co. v. City of Chicago, et al.,* No. 93 C 1218; *P.A. Bergner & Co. Holding Company v. Great Lakes Dredge & Dock Co., et al.,* No. 93 C 1219. *See* Memorandum Opinion and Order of April 13, 1993.

ated in state court, plaintiffs filed these cases in federal court. In light of the pending state court litigation, the City requests that this court abstain from exercising jurisdiction over these cases pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) or, in the alternative, pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[2]

## DISCUSSION

■ Federal courts possess a "virtually unflagging obligation" to exercise the jurisdiction given them. *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246; *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1287 (7th Cir.1988). Only when exceptional circumstances exist may a federal court abstain from exercising its jurisdiction and defer to the concurrent jurisdiction of a parallel state court proceeding. *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246; *Interstate Material*, 847 F.2d at 1287. The underlying consideration in *Colorado River* abstention is whether exceptional circumstances exist that would warrant abstaining; otherwise, concurrent proceedings in state and federal courts are perfectly acceptable, though perhaps wasteful of judicial resources. *Harris Trust and Savings Bank v. Olsen*, 745 F.Supp. 503, 506 (N.D.Ill.1990).

■ As a threshold matter, the court must ascertain whether parallel state proceedings actually exist. *Interstate Material*, 847 F.2d at 1287. Without parallel proceedings, *Colorado River* abstention is inapplicable. *Id.* Three of the four federal plaintiffs assert that the state and federal proceedings are "completely different" and, therefore, "parallelism is entirely lacking." Dayton Hudson's Br. at 6. The three plaintiffs view the state proceeding as "completely different" because

they are not plaintiffs in the state proceeding and some of the plaintiffs in state court, unlike the federal plaintiffs, seek recovery for economic loss. *Id.* at 5–6.

■ Although it is true that three federal plaintiffs are not party to the state court proceeding, *Colorado River* requires parallel suits, not identical suits.[3] *Interstate Material*, 847 F.2d at 1288. A suit is "parallel" when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Id.* at 1288. Formal symmetry need not exist between the state and federal actions; rather there should be a substantial likelihood that the state litigation will dispose of all claims presented in the federal case. *Lumen Construction v. Brant Construction Co.*, 780 F.2d 691, 695 (7th Cir.1985). The issue, therefore, is not whether there is an identity of parties in both forums, but whether the parties may be bound by the result in the state litigation under principles of collateral estoppel or issue preclusion. *See Harris Trust*, 745 F.Supp. at 507.

Although identity of parties is not dispositive, the *defendants* in both the state and the federal proceedings are the same. The plaintiffs in the state and federal suits are not identical, but they share equivalent litigation interests. The resolution of the issues in the state court proceedings would substantially dispose of the key issues in this federal suit. *See Indiana Insurance Co. v. Caldwell Enterprises, Inc.*, No. 92 C 41, 1992 WL 191125, 1992 U.S.Dist. Lexis 11495 (N.D.Ill. Aug. 5, 1992) (finding parallel state and federal proceedings brought by different plaintiffs against single tortfeasor). The claims in both forums arise from the same operative facts involving similar, and in many instances, identical allegations of tortious conduct. Indeed, the principal issue that must be de-

---

**2.** *Burford* abstention, applicable in limited contexts, is inapplicable in this instance. The facts and issues of this consolidated federal action require for their resolution only basic principles of tort law. Unlike the concerns addressed in *Burford* and the cases applying *Burford* abstention, plaintiffs' cases do not implicate issues regarding state regulatory or administrative schemes touching upon state industry or other aspects of regulatory concern, nor do the federal cases implicate difficult issues of state law bear-

ing on policy or regulatory problems. *See, e.g., Property & Casualty Insurance v. Central National Insurance Co.*, 936 F.2d 319 (7th Cir.1991).

**3.** American Home, unlike the other three federal plaintiffs, seemingly appears as plaintiff in both federal and state proceedings, albeit as subrogee for two different insureds. *See* American Home's Br. at 9, n. 6.

cided by either court is whether, in light of state immunity provisions and other traditional tort defenses, defendants are liable to the plaintiffs for damages suffered when the Chicago River flooded the city's business district. The additional issue present in the state court action, but absent from the federal cases (propriety of recovering for purely economic loss), is insufficient to destroy the parallel nature of the two proceedings. In short, the state and federal proceedings are sufficiently parallel to require further analysis of whether abstention is warranted.

■ Having determined that the state and federal proceedings are substantially similar, the court must next determine whether there exist exceptional circumstances that justify deference to the state court proceedings. *Caminiti and Iatarola, Ltd. v. Behnke Warehousing,* 962 F.2d 698, 701 (7th Cir.1992). There are at least ten factors that the court may consider in deciding whether exceptional circumstances are present: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law; (6) adequacy of the state court action to protect the federal plaintiffs' rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.[4] *LaDuke v. Burlington Northern R.R.,* 879 F.2d 1556, 1559 (7th Cir.1989). No single factor is necessarily determinative. *Caminiti,* 962 F.2d at 701, *citing Colorado River,* 424 U.S. at 818–19, 96 S.Ct. at 1247. Instead, the decision to stay or dismiss a federal action because of parallel state court litigation "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Interstate Material,* 847 F.2d at 1289, quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983).

■ The undesirability of piecemeal litigation, though applicable here to some degree, does not weigh heavily in favor of a stay. Indeed, the threat of piecemeal litigation is not comparable to the principal case relied upon by the City. *See Arkwright–Boston Manufacturers Mutual Insurance Co. v. City of New York,* 762 F.2d 205 (2d Cir.1985). *Arkwright* involved more defendants (three) than do the federal cases. In addition, the fewer claims in this court, coupled with the presence of only two defendants, enables this court to implement an efficient case management system that speeds resolution of the federal cases and reduces the potential for conflict inherent whenever concurrent litigation occurs. There exists, of course, some potential for conflict; however, that potential "does not, without more, warrant staying exercise of federal jurisdiction." *Colorado River,* 424 U.S. at 816, 96 S.Ct. at 1245. And additional elements do not favor a stay.

The order in which the courts obtained jurisdiction does not weigh heavily in either direction. Although the first flurry of flood cases entered state court nearly ten months before the federal plaintiffs filed these cases, priority of jurisdiction is not measured exclusively in terms of which complaint was filed first. *Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. at 939. Instead, priority of jurisdiction is measured by the relative progress that has occurred in the two forums. *Id.* For the most part, the state cases have progressed only to the point of a ruling on one of the City's motions to dismiss.[5] The state court recently modified its case management or-

---

4. The parties concede that several factors either are inapplicable or are not relied upon to support or resist abstention. *See, e.g.,* City's Br. at 12, n. 7; American Home's Br. at 12. Accordingly, factors one, two, eight and nine—jurisdiction over property, forum convenience, concurrent jurisdiction, and availability of removal—are not considered because they either do not apply, remain neutral in the balancing calculus, or are not invoked by the parties.

5. On April 21, 1993, the City moved to dismiss "All Complaints That the City Has Not Previously Moved to Dismiss." *See* American Home's Br. at 3. Moreover, only last week, April 27, did Great Lakes obtain leave to file a similar dismissal motion. *Id.* at 4.

ders to accommodate the additional property damage plaintiffs, who have only recently filed claims and who have opted-out of the class action. *See* Dayton Hudson's Br. at 3; American Home's Br. at 5. In addition, depositions have only recently been noticed; none have yet been taken. *Id.;* City's Reply at 6. The state class plaintiffs have propounded ten interrogatories and fifteen document requests to the two defendants. *See* Dayton Hudson's Br. at 10. Relatively few documents have been produced, and only last week did Great Lakes answer interrogatories propounded by the City. *See id.* (noting that Great Lakes' insurance policy not yet produced); American Home's Br. at 4; City's Mot. for Leave to Reply at ¶ 4 (noting that only twelve of four hundred anticipated responses have been received). In short, the priority of jurisdiction does not weigh heavily in favor of a stay.

The fifth factor, source of governing law, is an important consideration when federal issues exist. Indeed, in the abstention calculus, presence of federal issues favors the exercise of federal jurisdiction. *See Moses H. Cone,* 460 U.S. at 23–24, 103 S.Ct. at 941. In these cases, however, state law governs. Nonetheless, the existence of state tort law issues does not weigh *strongly* against the exercise of federal jurisdiction, because neither novel nor complex state law issues are implicated. *See id.* at 26 (noting that in *rare* instances state law issues may weigh in favor of stay). The City's contention to the contrary is misplaced. At its core, this litigation represents a traditional tort action, containing neither strained claims of purely economic loss nor involving exceptional application or unique understanding of Illinois' Tort Immunity Act. The presence of unremarkable state law issues, typical of most diversity cases, does not strongly support abstention.

Finally, the City argues that the plaintiffs' invocation of diversity jurisdiction "may well be vexatious or contrived." City's Br. at 15. The City perceives the timing and method of the federal filings as a "well-orchestrated attempt by plaintiffs' counsel to circumvent" the state court proceedings. *Id.* at 15. However, the federal plaintiffs' conduct may also be viewed as a considered, informed, and permitted decision to sue defendants in federal rather than state court. Plaintiffs have not filed suits concurrently in state and federal court.[6] *See Interstate Material,* 847 F.2d at 1289 (same plaintiff filed substantially same suit in two fora). Plaintiffs have chosen to proceed in this forum after first conducting an investigation, obtaining documents under the Freedom of Information Act, consulting with experts, and repairing their damaged property. Dayton Hudson's Br. at 9.

Plaintiffs contend that abstention would infringe their right to proceed in federal court. Without reaching the merits of plaintiffs' dubious contention that litigating their claims in state court would not adequately protect their rights because of perceived local favoritism or prejudice, deference must be accorded plaintiffs' decision to proceed in federal court.[7] Diversity jurisdiction serves to protect out-of-state parties from perceived—or misperceived—local prejudice. And though diversity of citizenship as a basis for federal jurisdiction has its critics, under existing law this court has a continuing obligation to protect the plaintiffs' right to proceed in their chosen forum: federal district court. *See Evans Transportation Co. v. Scullin Steel Co.,* 693 F.2d 715, 717 (7th Cir.1982).

As instructed by the United States Supreme Court, this court "is not to find some substantial reason for the *exercise* of federal

---

**6.** This is true even of American Home. Although a plaintiff in both state and federal court, American Home appears in this forum as subrogee for a different insured. *See* American Home's Br. at 9, n. 6.

**7.** When a district court decides to abstain under *Colorado River,* the court "presumably concludes that the parallel state-court litigation will be an adequate vehicle for ... the prompt resolution of the issues between the parties." *Moses H. Cone,*

460 U.S. at 28, 103 S.Ct. at 943. The average time from commencement of suit to trial in Cook County Circuit Court is five to seven years. *See* Dayton Hudson's Br. at 14. This court's calendar is current; trial shall commence promptly upon completion of discovery. Under these circumstances, it would be an abuse of discretion to stay the federal cases until the state litigation is resolved. *See Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. at 943.

jurisdiction." *Moses H. Cone,* 460 U.S. at 25–26, 103 S.Ct. at 941–42 (emphasis in original). Instead, the "task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Id.* The City has not set forth adequate reasons to justify a surrender of jurisdiction.

## CONCLUSION

Defendant City of Chicago's motion to dismiss or stay on abstention grounds is denied.