**Jesse M. JONES, Plaintiff,**

v.

**ILLINOIS CENTRAL RAILROAD COMPANY, Defendant.**

No. 94 C 483.

United States District Court,
N.D. Illinois,
Eastern Division.

July 7, 1994.

---

Mary Louise Kandyba, for plaintiff.

Edward H. MacCabe, MacCabe & McGuire, for defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

On January 26, 1994 Jesse Jones ("Jones") brought this action against Illinois Central Railroad Company ("IC") under the Americans with Disabilities Act of 1990 ("ADA," 42 U.S.C. §§ 12101–12213), in which he charges employment discrimination stemming from IC's claimed refusal to accommodate his physical disability, a work-related shoulder injury. Since April 1993 Jones has had pending in the Circuit Court of Cook County (93 L 5879) a suit under the Federal Employers' Liability Act ("FELA," 45 U.S.C. §§ 51–60) arising out of the same accident that gave rise to Jones' disability. IC has responded to Jones' ADA claim by moving to dismiss, arguing that ADA does not override the exclusive remedial provisions established by the Railway Labor Act ("RLA," 45 U.S.C. §§ 151–163) to govern all minor disputes involving rail employees. In particular IC contends that Jones' FELA claim constitutes his only avenue of redress.

At this point the motion is not only fully briefed, but this Court has in hand a lengthy and scholarly[1] draft opinion from its law clerk resolving the issues as posed by the parties. But just as the late Adlai Stevenson remarked ruefully after his initial loss to Dwight Eisenhower in 1952 that "something funny happened on the way to the White House," so something funny has happened to the current motion in terms not posed by the litigants.

It is of course intuitively troublesome to contemplate the prospect that the parties should simultaneously do battle on two different fronts—both in the state court under FELA and in this District Court under ADA—on such closely related claims. And although the parties do not appear to have recognized it, the legitimacy of that intuitive unease is reflected in directly applicable provisions of law.

█ To begin with, there is no reason that Jones could not have advanced his ADA claim before the same state court in which his FELA claim is pending. Enforcement of ADA's prohibitions against handicap discrimination expressly draws its sustenance from Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. §§ 2000e to 2000e–17)—as ADA's 42 U.S.C. § 12117(a) specifies:

> The powers, remedies, and procedures set forth in sections 2000e–4, 2000e–5, 2000e–6, 2000e–8, and 2000e–9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment.

And in *Yellow Freight System, Inc. v. Donnelly,* 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990) a unanimous Supreme Court has held that the state courts have concurrent jurisdiction with the federal courts for the adjudication of Title VII claims brought by employees under 42 U.S.C. § 2000e–5(f). That being so, it necessarily follows that the state courts have concurrent jurisdiction over ADA claims as well.

█ To be sure, the existence of such concurrent jurisdiction does not alter the fact that ADA actions are federal-question cases. Hence there is no place for the possible application of 735 ILCS 5/2–619(a)(3) to require dismissal of this action because of the prior pendency of the FELA lawsuit, as there might be if this action were here via diversity jurisdiction (see *Commonwealth Edison Co. v. Gulf Oil Corp.,* 541 F.2d 1263, 1271–72 (7th Cir.1976))—an issue that our

---

**1.** Unfortunately those two characteristics do not always coincide, but in this case they do.

Court of Appeals has not yet decided (*Locke v. Bonello,* 965 F.2d 534, 537 n. 2 (7th Cir. 1992)) and that continues to divide the district judges in this state.[2] Instead the question that calls for threshold examination is whether this case should be excepted "from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them" (*Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976))—whether this case should rather be dismissed under the teachings of *Colorado River* and its numerous progeny.

Only a few moments' reflection is needed to understand why that prospect requires analysis. As in most FELA cases, the existence of Jones' claimed disability—the inability to return to his former job—means that the future loss of income will necessary bulk very large in Jones' FELA claim for damages in the Circuit Court. Indeed, except where an injury is sustained very near the end of an employee's expected working life, the deprivation of that future income stream (even when it is appropriately discounted to present value) typically dominates the damages calculation in FELA cases.

On the obverse side of the same coin, an employer's willingness (or its forced decision) to put the employee back to work in a comparably compensated position would cut off those future damages, in precisely the same way that an employee's short-term injury with no residual effect on employability will necessarily generate only small damages (if any) that are attributable to the post-trial period. And if the employer is prepared to accommodate the job's demands to the employee's work-injury-triggered disability (or is required to do so under ADA), the same result would obtain.[3]

Thus an ADA claim of the sort advanced by Jones here is closely linked to the FELA claim that for some reason he has chosen to assert in a different forum, even though he was free to bring that ADA claim in the same trial court where his FELA action was already pending. And it is in those terms that the potential application of the *Colorado River* doctrine must be evaluated.

*Colorado River,* 424 U.S. at 817–18, 96 S.Ct. at 1246–47 contrasted the general approaches that should be taken to federal court abstention in two different types of situations: those involving state-federal concurrent jurisdiction and those involving wholly federal concurrent jurisdiction. It said in the former respect (*id.* at 818, 96 S.Ct. at 1247):

> Given this obligation [the "virtually unflagging obligation" referred to earlier in this opinion], and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention. The former circumstances, though exceptional, do nevertheless exist.

Nonetheless, after having set out the types of factors that a federal court should consider in assessing the appropriateness of dismissal in the state-federal concurrent-jurisdiction con-

---

**2.** See Appendix.

**3.** This is not at all a hypothetical scenario. In August 1993 this Court conducted an FELA trial in which the injured employee—an electrician doing heavy work on railroad engines and other railroad cars and equipment—suffered a severe back injury, in consequence of which the employee claimed a permanent disability that prevented him not only from working at the electrician's job but also from engaging in any other gainful employment. On the eve of trial the railroad offered to return the employee to work at the same pay scale in an adapted electrician's position, thus utilizing his skills but without burdening him with any substantial physical demands. Consistently with the employee's testimony and that of his medical expert about the employee's physical limitations, the employee refused the job. At trial, the battle of the other experts—the parties' respective economists—presented an enormous disparity between their damage calculations, respectively reflecting the inclusion and exclusion of many future years of lost income. Although the specifics of that case may have been somewhat unusual (with the employer having voluntarily undertaken the equivalent of an ADA-mandated obligation in an effort to minimize the employee's damages claim, rather than being forced to do so through litigation), it graphically illustrates the interrelationship between an FELA claim and ADA's accommodation obligation (or the lack of one) in a situation such as Jones'.

text (*id.*), *Colorado River* ultimately upheld the dismissal of the federal complaint.

Our Court of Appeals has said on a number of occasions that if application of the *Colorado River* doctrine is in order at all, "a stay of the federal action is usually considered more appropriate than a dismissal" (*Aetna Casualty and Sur. Co. v. Kerr–McGee Chem. Corp.*, 875 F.2d 1252, 1261 (7th Cir. 1989) and cases cited there). But that proposition is consistently announced in the more common context in which the issues in the two actions are identical, or so nearly so that economy for both courts and the litigants is best served by a stay—by putting the federal case on a back burner until resolution of the state court case (a resolution that would almost invariably and inevitably moot all or substantially all aspects of the federal case).

█ By sharp contrast, as already explained here, the issues in Jones' two cases are not identical, though they plainly have the close relationship that would trigger 735 ILCS 5/2–619(a)(3) if it were applicable here (see *Quantum Chem. Corp. v. Hartford Steam Boiler Inspection & Ins. Co.*, 246 Ill. App.3d 557, 560, 186 Ill.Dec. 496, 498, 616 N.E.2d 686, 688 (3d Dist.1993)). More to the point, their close relationship similarly qualifies the two cases for potential *Colorado River* treatment, which requires only *parallel* and not *identical* suits (*Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir.1992) and cases cited there). Surely there is an important parallel, though not identity, in the two lawsuits involved here: Whatever resolution may be made of Jones' ADA claim in which he seeks to compel IC to accommodate his disability will critically affect the price tag on Jones' FELA action. Under those circumstances it would be wholly counterproductive, and hence frankly absurd, for this Court to exercise abstention in the form of *staying* this action while the FELA case plays out to its ultimate conclusion.

So the question really comes down to whether or not *Colorado River* dismissal of this action is called for. Our Court of Appeals has outlined some substantial expansion of the four factors that were originally identified in *Colorado River*, 424 U.S. at 818,

96 S.Ct. at 1246–47 to be weighed in the balance—an expansion based on post-*Colorado River* litigation before the Supreme Court and on Seventh Circuit case law as well (see *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288–89 (7th Cir.1988)). Many of those factors simply do not apply here at all, for the most part because of the difference between the present situation and the more typical situation that involves identical or virtually identical actions pending in the two jurisdictions. But in reviewing the factors that *do* matter, this Court has given careful heed to the mandate of *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. at 1246–47 (citation omitted):

> No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. Only the clearest of justifications will warrant dismissal.

As a result of that balancing process, it must be concluded that "reasons of wise judicial administration" (*Colorado River*, *id.* at 818, 96 S.Ct. at 1246–47) do indeed call for dismissal here.

To begin with, what was true in *Interstate Material*, 847 F.2d at 1289 is true here as well:

> Two of the factors expressly listed in *Colorado River* apply to the circumstances of this case: (1) the desirability of avoiding piecemeal litigation and (2) the order in which jurisdiction was obtained by the concurrent forums.

But what are perhaps most important to resolution of the current question are two other factors specifically referred to in *Interstate Material*, *id.*, 847 F.2d at 1288—the presence of concurrent jurisdiction in the two courts (*Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 666, 98 S.Ct. 2552, 2559, 57 L.Ed.2d 504 (1978)) and the complete adequacy of the state court action to protect Jones' rights by the simple device of adding the ADA claim to that action (*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26–28, 103 S.Ct. 927, 942–43, 74 L.Ed.2d 765 (1983))—and, most significantly in terms of "wise judicial administration," the obvious

need to integrate the two claims because of their mutual interdependence (something that two separate courts, which necessarily proceed in their own respective ways and at their own respective paces, obviously cannot do in anything even approaching the same way as a single court presiding over the totality of the claims).

Accordingly this Court concludes (1) that this is indeed a prime candidate for the application of the *Colorado River* doctrine and (2) that the appropriate form for that application to take is obviously the dismissal and not the stay of this action. It should of course be emphasized that although this opinion has therefore not ruled on the substantive issue that was posed by IC's motion and on which the parties have clashed—the argument that RLA and the FELA action itself bar Jones' effort to invoke ADA—if that argument had been plainly right this Court would not be sending Jones on a wild goose chase to add that claim to the state court lawsuit. Finally, in light of Jones' need to take that step in the state court, this dismissal is accompanied by granting leave to Jones to move for reinstatement of this action on or before July 28, 1994.[4] Absent a timely motion for such reinstatement filed in this Court's chambers by that outside date, the order of dismissal will become final on July 29, 1994.

*Appendix*

As this opinion reflects (see text at n. 2), the status of 735 ILCS 5/2–619(a)(3) ("Section 2–619(a)(3)") as the predicate for dismissal of diversity-of-citizenship lawsuits based on the pendency of prior state court litigation is not yet settled in this Circuit. Just a brief skeletal exposition of that subject, though outside the scope of this action, may be in order here.

All of the litigation on that score in District Courts in Illinois and in our Court of Appeals stems from the decision by Honorable Hu-

bert Will issued over a quarter century ago in *Seaboard Fin. Co. v. Davis,* 276 F.Supp. 507, 516 (N.D.Ill.1967). Since the Supreme Court decided *Colorado River* nearly a decade after *Seaboard,* Illinois District Judges have come down on both sides of the Section 2–619(a)(3) issue (with the most recent published opinion being the one issued by this Court's colleague Honorable John Nordberg in *Fofi Hotel Co. v. Davfra Corp.,* 846 F.Supp. 1345 (N.D.Ill.1994)). Judge Nordberg's analysis and conclusion there differ from the analysis and conclusions reached by a number of this Court's other colleagues (who are cited in part in *Fofi Hotel* ), as well as from the position of this Court (see, e.g., *General Elec. Co. v. Lofton,* 675 F.Supp. 1107 (N.D.Ill.1987)).

In this Court's view, perhaps the most significant development in this area is the fact that our Court of Appeals' opinion in *Locke v. Bonello,* 965 F.2d 534 (7th Cir. 1992)—even while it reserved the question of the applicability of the Illinois statute in diversity cases, *id.* at 537 n. 2—has expressly found Judge Will's reasoning in *Seaboard* to be "persuasive" (*id.* at 536) and has actually "adopted" that reasoning (*id.* at 538). *Locke, id.,* 965 F.2d at 538 n. 3 has also disclaimed any notion that *Colorado River* "necessarily requires federal courts to disregard Section 2–619(a)(3)." Although *Fofi Hotel,* 846 F.Supp. at 1348–49 has discounted the relevance of *Locke* in its resolution of the issue, this Court would divine the *Locke* opinion's entrails quite differently. That question, however, is for another day.

---

4. This precautionary measure is taken to allow for what would appear to be an unlikely contingency—the Circuit Court's refusal to permit an appropriate amendment to the FELA complaint. This Court is of course well aware that 735 ILCS 5/2–616 contains provisions very much along the lines of Fed.R.Civ.P. 15(a) and 15(c), under which amendments that add claims to existing complaints are liberally allowed and are protected against limitations problems by a relation-back doctrine. Though this Court does not of course mean to imply any intrusion upon the Circuit Court's discretion in that respect, it seems fair to anticipate that such an amendment would likely be allowed.