896 F.Supp. 973 (1995)
SILVACO DATA SYSTEMS, INC., a California corporation, Plaintiff,
v.
TECHNOLOGY MODELING ASSOCIATES, INC., a California corporation, Defendant.
Civ. No. C-95 20338 RMW.
United States District Court, N.D. California.
July 17, 1995.
*974 Chris Scott Graham of Graham & James, Palo Alto, CA, for plaintiff.
John J. Steele of Fenwick & West, Palo Alto, CA, for defendant.
ORDER GRANTING DEFENDANT'S MOTION FOR A STAY; DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
WHYTE, District Judge.
Defendant Technology Modeling Associates' ("TMA's") motion for a stay and Plaintiff Silvaco Data Systems, Inc.'s ("Silvaco's") motion for a preliminary injunction were heard on June 16, 1995. The court has read the moving and responding papers and heard the oral arguments of counsel. For the reasons set forth below, the court grants TMA's motion for a stay and denies Silvaco's motion for a preliminary injunction without prejudice.

BACKGROUND
The motions currently before the court are but another battle in the ongoing war between competing computer software companies Silvaco and TMA. Both parties are Silicon Valley companies in the business of manufacturing software that performs computer assisted drawing ("CAD") used in the development of semiconductor technologies.
The events leading to the current litigation began in the summer of 1991 when TMA started to suspect that someone was illicitly stealing trade secrets by "dumpster diving" in the trash bins behind their offices. After hiring a private investigator to "stake out" the area, TMA discovered Silvaco's janitor removing trash bags full of TMA's documents from the dumpsters and transporting them back to Silvaco.
Consequently, on July 15, 1991, TMA filed suit in state court against Silvaco and its president Ivan Pesic for unfair competition, trespass, intentional interference with prospective economic advantage, misappropriation of trade secrets, conspiracy, unjust enrichment, and for the imposition of a constructive trust ("First State Action"). Silvaco counter-claimed for intentional interference with prospective economic advantage, defamation, bad faith prosecution and unfair competition. The case was assigned to Judge William Martin. After substantial discovery was completed, the parties agreed to a settlement on July 27, 1992.
Thereafter, TMA allegedly found out that Pesic had perjured himself and had withheld documents during discovery in the First State Action. TMA reported this information to the police, who used it to obtain a search warrant to enter Silvaco's premises. Based on documents found in the police search, Pesic was indicted, tried, and ultimately acquitted on perjury charges.
After the criminal trial ended, Silvaco moved to enforce the terms of the settlement in the First State Action. TMA opposed this motion by arguing that Silvaco had obtained the settlement by engaging in fraudulent discovery and other inequitable conduct. Judge Martin agreed with TMA, and on February 21, 1995 he issued an order denying Silvaco's motion to enter judgment enforcing the settlement.
In October of 1994, just before Judge Martin issued his order refusing to enforce the settlement, Silvaco filed another suit in state court ("Second State Action"), once again alleging interference with prospective economic advantage, unfair competition, defamation and false light publicity. The second case was assigned to Judge Richard Turrone.
TMA demurred to the Second State Action. On February 24, 1995, Judge Turrone granted TMA's demurrer on the interference and unfair competition claims based on the "another action pending" doctrine under Cal. *975 C.C.P. § 430.10(c). Judge Turrone appears to have stayed these claims because he found that they alleged continuing violations which were encompassed within the already pending First State Action. Judge Turrone also granted TMA's demurrer on the defamation and false light claims based on pleading defects. Thereafter, on May 31, 1995, the First and Second State Actions were consolidated for discovery purposes, although not, as of yet, for trial.
Silvaco filed the current action in federal court on May 19, 1995 alleging three causes of action: 1) false advertising under the Lanham Act; 2) false advertising under Cal.Bus. & Prof.Code § 17500 and; 3) unfair competition under Cal.Bus. & Prof.Code § 17200. These claims are based solely on TMA's distribution of advertisements allegedly making false comparisons between TMA's and Silvaco's products.
Silvaco has now moved for a preliminary injunction to prevent TMA from continuing to distribute its allegedly false advertisements and to require TMA to send out corrective notices. TMA responds by moving for a stay of the federal action due to the existence of the pending state actions.

ANALYSIS

I. TMA's Motion for a Stay

TMA argues that the court should stay this action because extremely similar claims are already pending in the First and Second State Actions. Silvaco responds that a stay is not warranted because the state and federal actions involve different facts, evidence and legal issues, and because there are other factors that weigh in favor of exercising federal jurisdiction.

A. Legal Standard
Federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). However, in the interest of "wise judicial administration," a federal court may stay its proceedings where a parallel state action is pending. Id. A stay under the Colorado River doctrine is appropriate only in "exceptional circumstances." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19, 103 S.Ct. 927, 938, 74 L.Ed.2d 765 (1983). Six factors may be relevant in determining whether a stay should be issued:
(1) whether either court has assumed jurisdiction over a res; (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) whether the state proceeding is adequate to protect the parties' rights.
Nakash v. Marciano, 882 F.2d 1411, 1415 (9th Cir.1989) (internal citations omitted). In addition, the court may consider whether the plaintiff in the federal action has engaged in forum shopping. Id. at 1417.

B. Analysis
Here, as a threshold question, the court must first determine whether the state and federal actions are parallel, or at least "substantially similar" so as to implicate the Colorado River doctrine in the first place. See Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1287-88 (7th Cir.1988); Crawley v. Hamilton County Commissioners, 744 F.2d 28, 31 (6th Cir.1984); Hifonics Corp. v. Mark I Electronics Corp., 1992 U.S.Dist. LEXIS 15095, at * 8 (N.D.Cal. 1992). If the answer is yes, the court must then evaluate the Nakash factors to determine whether a stay of the federal action is appropriate. If the answer is no, then the Colorado River doctrine does not apply and no stay may be imposed.

1. Similarity of the State and Federal Actions

TMA asserts that although this action and the state court actions are not identical, they are still substantially similar as defined in Nakash. Silvaco responds that the state and federal actions are only tangentially related since they involve different factual settings and different laws.
The court in Nakash stated that "exact parallelism" is not required in order to justify a stay. 882 F.2d at 1416. It is adequate if the state and federal actions are "substantially *976 similar." Id. In Nakash, the state action involved various causes of action for violation of state securities laws, fraud and breach of fiduciary duty. The federal action, filed five years later, included slightly different parties and similar, although not identical, causes of action. Id. at 1412-13. The court found that the district judge had properly stayed the federal action because it was merely a "spin-off' of the more comprehensive state litigation." Id. at 1417.
Here, the situation is analogous to that in Nakash. Although the state and federal actions are not identical, they include extremely similar claims that all arise out of the long-standing competitive feud between TMA and Silvaco. See id. at 1416 (upholding finding of similarity because "[a]ll of these disputes concern how the respective parties have conducted themselves since Nakash purchased a portion of Guess"). The allegedly false advertising materials that are the whole basis for Silvaco's federal suit are encompassed within the broader dispute in state court as evidence of TMA's alleged continuing interference with prospective economic advantage and unfair competition. Although Silvaco does not assert a Lanham Act claim in state court, the crux of Silvaco's allegations with respect to the advertising materials is the same in both fora: that the advertisements were false and caused damage to Silvaco's business and reputation. In this sense, Silvaco's federal action is merely a spin-off of the ongoing battle in state court.
The mere fact that the claims in state and federal court are not based on exactly the same laws does not preclude a finding of substantial similarity. For example, in Ruth Chris Steak House Franchise, Inc. v. Wamstad, 1994 U.S.Dist. LEXIS 16951, 1994 WL 660508 (E.D.La.1994), the court stayed a federal action alleging a Lanham Act violation because state law claims for false advertising and unfair competition were pending in state court. In doing so, the court reasoned that "the collateral use of factual determinations made in the state court case in the federal proceedings, or vice versa, would be an issue. In addition, needed discovery would be the same." Id. at * 17. See also, Riddell Sports, Inc. v. Sport Supply Group, 1994 U.S.Dist. LEXIS 2909, 1994 WL 86407 (S.D.N.Y. Mar. 15, 1994) (staying federal action alleging trademark infringement and unfair competition under the Lanham Act because a contract action in state court required interpretation of the same documents).
In sum, although not addressing identical factual or legal issues, the state and federal actions are substantially similar so as to justify application of the Colorado River doctrine.

2. The Nakash Factors

a. Res

Since there is no res at issue in this case, this factor is not relevant.

b. Relative Convenience of the Forums

The convenience factor does not militate against abstention either. The state and federal courthouses are located in close proximity to each other. Furthermore, although Silvaco baldly asserts that state court is less convenient due to the adverse impact the California "three-strikes" law has had on the state civil docket, Silvaco does not allege that it has actually suffered, or expects to suffer, any undue delay in its state proceedings. In fact, the information provided suggests that despite some current delay in the state court, the Santa Clara County Superior Court has a remarkable record of getting cases out on the originally scheduled trial date.

c. Avoiding Piecemeal Litigation

Piecemeal litigation occurs "when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." American Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co., 843 F.2d 1253, 1258 (9th Cir.1988); Ryder Truck Rental, Inc. v. Acton Foodservices Corp., 554 F.Supp. 277, 281 (C.D.Cal.1983).
Here, this factor tips strongly in favor of a stay because there is clearly the chance of duplicative effort and conflicting results concerning TMA's allegedly false advertising materials. Although there is no Lanham Act claim in state court, Silvaco has asserted in both fora that TMA's advertising materials are false and misleading. Silvaco has listed the product comparison sheets in the state court proceedings as being defamatory *977 (Steele Decl., Ex. N) and as being evidence of malice. The sheets have been the subject of discovery. Even if Silvaco's state pleadings were deemed to be insufficient to allow Silvaco to claim unfair competition or defamation based upon the advertising materials (a deficiency that could presumably be cured by a routine amendment), the alleged false or misleading character of them will most likely be litigated in connection with Silvaco's claim that TMA acted with malice. The state court actions involve many claims of wrongdoing by the parties in connection with their business competition. It makes no sense to try and carve out one aspect of their dispute and try it separately, particularly since it is intertwined with the issues involved in the other aspects of their ongoing war.

d. The Order in Which Jurisdiction Was Obtained

The Ninth Circuit has stated that there are two elements involved in evaluating this factor: 1) which complaint was filed earlier and; 2) which of the two actions has progressed further. Travelers Indemnity Co. v. Madonna, 914 F.2d 1364, 1370 (9th Cir.1990).
Here, both elements point towards deferral to the state proceedings. First of all, there is no dispute that the state actions were filed first. The First and Second State Actions were commenced on July 15, 1991 and November 7, 1994 respectively, whereas the federal action was not filed until May 19, 1995. Second, there is no doubt that the state actions have progressed further. The First State Action is nearly three years old and has seen substantial discovery and motions. The Second Action, nearly eight months old, has seen two complaints, two demurrers, several discovery motions, three days of depositions, the appointment of a special master, and the setting of a date for a summary adjudication motion. In contrast, the only activity thus far in the federal action are the current motions.
Notwithstanding the foregoing, Silvaco argues that deferral to the state actions is not appropriate because very little has occurred specifically with respect to TMA's alleged false advertising materials. Although this argument has some merit, since the state courts have not made any substantive decisions concerning Silvaco's false advertising claims, significant activity in state court has nonetheless occurred. For example, the advertising materials were the subject of a motion to compel, were identified in one of Silvaco's discovery responses and were discussed during deposition testimony.
Thus, since the state actions pre-date the federal action, and because substantial pre-trial activity has taken place in state court, this factor weighs in favor of a stay.

e. Controlling Law

In Moses Cone, the Supreme Court stated that the presence of federal law issues is "a major consideration weighing against surrender [of the district court's jurisdiction]." 460 U.S. at 2, 103 S.Ct. at 928. However, where state and federal courts have concurrent jurisdiction over a federal claim, this factor becomes less significant. Id. at 25, 103 S.Ct. at 941-42; Nakash, 882 F.2d at 1416.
Here, TMA argues that the controlling law tips slightly towards imposition of a stay because two of Silvaco's claims in federal court are based on state law, while only one alleges a federal violation. Silvaco responds that the bulk of the relief it seeks in federal court, including the preliminary injunction, arises out of the Lanham Act.
The court agrees with Silvaco that its federal action is based primarily on federal law. However, as in Nakash, this factor does not weigh significantly against a stay because concurrent jurisdiction under the Lanham Act is available in state court. See In re Keasby & Mattison Co., 160 U.S. 221, 16 S.Ct. 273, 40 L.Ed. 402 (1895) (because federal courts do not have exclusive jurisdiction over Lanham Act claims, such claims may be brought in state courts)

f. Adequacy of the State Proceedings

This factor does not weigh against a stay. Silvaco does not suggest any reason why the state court cannot adequately protect its rights. After all, as discussed earlier, Silvaco can invoke the state court's concurrent jurisdiction over its Lanham Act claims, and even move for injunctive relief, if it so wishes.

*978 g. Forum Shopping

Finally, the forum shopping factor militates in favor of a stay. Over the course of the last four years, Silvaco has asserted substantially similar claims in three different actions: as counter-claims in the First State Action, and as primary claims in the Second State Action and this federal action. As TMA points out, the timing of Silvaco's filing of new claims has coincided with adverse rulings in their earlier actions. For example, Silvaco filed its Second State Action just prior to Judge Martin's reopening of the First State Action based on a finding that Pesic had committed discovery fraud. Similarly, Silvaco filed suit in federal court at about the same time that Judge Turrone decided to consolidate the First and Second Actions for discovery purposes.
The circumstances suggest that Silvaco believes changing forums would be beneficial to it. As the Ninth Circuit commented in Nakash: "Apparently, after three and one-half years, Nakash has become dissatisfied with the state court and now seeks a new forum for their claims. We have no interest in encouraging this practice." Id. at 1417.
In sum, this is a case where a stay is properly imposed. The ongoing state actions bear a substantial similarity to this federal action and the Nakash factors weigh in favor of a stay. The interests of judicial administration and the economic interests of the parties will be best served by deferring to the ongoing dispute in state court.

II. Silvaco's Motion for a Preliminary Injunction

Because the court has decided to stay this action, it is not necessary at this time to address the merits of Silvaco's motion for a preliminary injunction. Thus, the preliminary injunction motion is denied without prejudice to refiling it in state court or here in federal court if and when the stay is lifted.

ORDER
Based on the foregoing, TMA's motion for a stay is granted and Silvaco's motion for a preliminary injunction is denied without prejudice.