**PEAK PERFORMANCE NUTRITION, a Nevada Domestic Corporation, and William E. Wheeler, Ph.D., an individual, Plaintiffs,**

v.

**MEDIA POWER, INC., a Maine corporation, Kenneth W. Byers, an individual, and Ken Wright, an individual, Defendants.**

No.   CV–09–04933–FMC–SHx.

United States District Court, C.D. California.

Nov. 10, 2009.

Jing James Li, David Perez, Greenberg Traurig LLP, East Palo Alto, CA, for Plaintiffs.

Carlos F. Negrete, Carlos F. Negrete Law Offices, San Juan Capistrano, CA, K. Andrew Kent, Rincon Venture Law Group, Westlake Village, CA, for Defendants.

### ORDER DENYING DEFENDANT WRIGHT'S MOTION FOR ORDER OF ABSTENTION.

FLORENCE–MARIE COOPER, District Judge.

This matter is before the Court on defendant Ken Wright's motion for abstention (docket no. 8), filed September 11, 2009. The Court has considered the moving, opposition, and reply documents submitted in connection with this motion and deems the matter appropriate for decision without oral argument. *See* Fed.R.Civ.P. 78; Local Rule 7–15. Accordingly, the hearing set for November 23, 2009 is removed from the Court's calendar. For the reasons and in the manner set forth below, the Court hereby DENIES Ken Wright's Motion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of a dispute about a nutritionist's intellectual property. The plaintiffs are Dr. William E. Wheeler ("Wheeler"), a nutritionist, and Peak Performance Nutrition ("Peak"; collectively, "Plaintiffs"). Wheeler co-owns Peak with his wife, Linda Wheeler. There are three defendants: Media Power Inc. ("Media Power"), a Maine corporation; Media Power's current president Kenneth W. Byers ("Byers"), who resides in Florida; and Ken Wright ("Wright"), who resides in California (collectively, "Defendants"). Wright owns Incubation LLC ("Incubation") and Nature's Pure Body Institute ("Nature's PBI"), California corporations not party to this suit.

While working with Global Health Services, Inc. ("Global Health"), Wheeler developed a protein mix formula called "Gold Standard Protein" ("GSP"). In 2000, Global Health went out of business. Two years later, Wright, who had acquired the GSP formulas from a former Global Health salesman, contacted Wheeler. Wheeler and Wright agreed that Wright would use Wheeler's formulas and likeness to market and sell GSP. (Complaint, 4:20–24). With Wheeler's help and input, Wright began selling GSP products through incubation and Nature's PBI. Wright paid Wheeler royalties from 2003 to 2008. (Comp. 5:7–8).

Wright's company, Incubation, then licensed some of the GSP-related intellectual property rights to Media Power. Plaintiffs allege that Defendants then misused Wheeler's intellectual property. For example, Defendants allegedly used Wheeler's name and likeness to promote non-GSP products, infringed on his trademark, and did not pay all due royalties. (Comp. 6–7).

In May 2008, Plaintiffs sued Incubation and Nature's PBI in Ventura County Superior Court. In this state court action, Plaintiffs initially asserted only claims related to alleged breaches of the contracts Wheeler made with Incubation and Nature's PBI. In June of 2008, the state court defendants filed a cross-complaint against the Plaintiffs and Linda Wheeler. The state court action parties then conducted fairly extensive discovery, serving document requests, interrogatories, and subpoenaing each other and third parties.

The initial state court trial date of July 7, 2009, was vacated at Plaintiffs' request. Two days later, Plaintiffs filed the federal suit presently before this Court, suing Media Power, Byers, and Wright under a federal claim for false advertisement in violation of Section 43 of the Lanham Act, and five state law claims for: 1) trademark infringement; 2) misappropriation of the right to publicity; 3) defamation and false light; 4) misappropriation of trade secrets; and 5) unfair competition.

On July 16, 2009, a week after filing their federal case, the Plaintiffs amended their state complaint to include California common law claims for trademark infringement, misappropriation of trade secrets, and misappropriation of publicity rights.

On September 2, 2009, the state defendants amended their cross-complaint, adding three third-party defendants to that suit. The state court trial is currently set for January 19, 2010.

Wright has requested an order of abstention, dismissal, or stay of the federal action pending resolution of the state action, pursuant to the "Colorado River Doctrine."

## II. STANDARD OF LAW

Federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conservation Distr. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). However, there are "circumstances permitting dismissal of a federal suit due to the presence of a concurrent state court proceeding[.]" *Id.,* at 818, 96 S.Ct. 1236. Under *Colorado River* and its progeny, the Court may stay or dismiss Plaintiffs' federal action pending final resolution of the state proceeding, but only in exceptional circumstances. "Only the clearest of justifications will warrant dismissal." *Moses H. Cone Memorial Hosp. v. Mercury Constr.,* 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (quoting *Colorado River,* 424 U.S. at 818–819, 96 S.Ct. 1236).

The Supreme Court and the Ninth Circuit have articulated factors a court should consider in deciding whether to abstain: (1) which court first assumed jurisdiction over the *res* in dispute; (2) the relative convenience of the forums; (3) the need to avoid piecemeal litigation; (4) the order in which the state and federal actions were filed; (5) whether state or federal law controls; (6) whether the state proceeding is adequate to protect the parties' rights; and (7) whether the federal court proceeding is an instance of forum shopping. *Colo. River,* at 818, 96 S.Ct. 1236 (factors 1–4); *Moses Cone* at 25–26, 103 S.Ct. 927 (factors 5–6); *Travelers Indem. Co. v. Madonna,* 914 F.2d 1364, 1367–68 (9th Cir.1990) (factor 7). "These factors are to be applied in a pragmatic

and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'" *American Int'l Underwriters, (Philippines), Inc. v. Continental Ins. Co.,* 843 F.2d 1253, 1257 (9th Cir.1988) (quoting *Moses Cone,* at 16, 103 S.Ct. 927). However, "[a]ny doubt as to whether a factor exists should be resolved against a stay, not in favor of one." *Madonna,* 914 F.2d at 1369. Thus, "the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a [Colorado River] stay." *Intel Corp. v. Advanced Micro Devices, Inc.,* 12 F.3d 908, 913 (9th Cir. 1993).

### III. DISCUSSION

#### A. Jurisdiction over a *res* and relative forum convenience.

■ Here, the first factor, jurisdiction over a disputed *res,* is irrelevant. The second factor, relative forum convenience, does not favor abstention. The state court action is pending in Ventura, California, less than 100 miles from Los Angeles, where this Court is sitting. *See Madonna,* 914 F.2d at 1368 (200 miles between courts does not weigh towards abstention); *Puck v. WP Pacific,* No. SA CV 06–1108, 2007 WL 2315952, at *4 (C.D.Cal.2007) (forum convenience factor neutral where the state court was in Los Angeles and the federal court in Orange County).

#### B. Piecemeal litigation.

■ The third factor is the need to avoid piecemeal litigation. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *American Int'l Underwriters,* 843 F.2d at 1258. "A correct evaluation of this factor involves considering whether *exceptional circumstances* exist which justify special concern about piecemeal litigation."

*Madonna,* 914 F.2d at 1369 (emphasis added).

Here, although there are parallels between the state and federal actions, there are also substantial differences. The suits will involve different parties and will resolve different claims. The Plaintiffs in both suits are the same, but the state action includes at least four third-party defendants who are not party to the federal suit. Also, the federal suit includes two defendants, Media Power and Byers, who are not party to the state litigation.

Although a resolution of the two actions may entail some duplicative fact-finding by the courts, the legal issues and fundamental factual underpinnings are different. For example, the intellectual property violations allegedly committed by the state court defendants may have little or nothing to do with the violations allegedly committed by the federal defendants. In their state suit, Plaintiffs allege intellectual property violations that largely flow from, or are related to, the defendants' alleged breach of their contracts with Wheeler. According to the state complaint, after breaching the contracts (by not paying due royalties and mis-using Wheeler's likeness to promote non-GSP products) the defendants lost their rights to use Wheeler's intellectual property. (State Comp. 6:26–7:3; 7:16–21). Conversely, the federal action focuses on alleged violations that stem from the Defendants' use of Wheeler's identity to promote articles he did not write, and products he did not design. (Comp. 5:12–6:5; 9:1–7). While there is some overlap between the two suits, the federal suit is more than just a spin-off of the state suit; the federal suit seeks remedies for alleged violations that flow from a different nucleus of operative facts.

Moreover, because the parties and claims are different, the risk of the two tribunals reaching contradictory results is

low. It is also unlikely that a decision in one suit would make the other suit obsolete. The state court's ruling vis-á-vis Incubation and Nature's PBI will not resolve Plaintiffs' claims against Media Power, Byers, and Wright.

This case is distinguishable from *Nakash, Silvaco,* and *Puck.* The courts in *Nakash* and *Silvaco* both found that federal abstention was warranted where the lawsuits focused on the same disputes between essentially identical parties; the federal suits were merely "spin-offs" from the broader state suits. *Nakash,* 882 F.2d at 1416–17; *Silvaco Data Sys. v. Technology Modeling Assocs.,* 896 F.Supp. 973, 976 (N.D.Cal.1995). In *Puck,* the court reasoned that the federal plaintiff's ownership and control of the state court defendants increased the parallelism between the two suits even though, nominally, the parties were different. *Puck,* 2007 WL 2315952, at *4. Here, Wright argues that this case is especially analogous to *Puck* because Wright owns both of the state court defendants.

However, the key distinction between the present case and *Puck, Nakash,* and *Silvaco* is that, here, the two suits target different actions by different sets of parties. In addition to Wright, who owns the state court defendants, the federal suit also includes Media Power and Byers as defendants, while the state suit includes four third-party defendants not party to the federal suit. Their presence significantly reduces the parallelism of the two suits, thereby reducing the potential for piecemeal litigation.

While this factor is not clear-cut, "[a]ny doubt as to whether a factor exists should be resolved against a stay, not in favor of one." *Madonna,* 914 F.2d at 1369. There is no compelling reason why the suits should not proceed in their respective tribunals.

## C. Filing order.

■ The fourth factor, the order in which the actions were filed, also does not weigh heavily in favor of abstention. The state action was filed a little over a year before the federal action. However, the Court must also consider the progress of the state action. *Moses Cone,* 460 U.S. at 21, 103 S.Ct. 927; *Madonna,* 914 F.2d at 1370. The state action was substantially amended by both sides, after the federal action was filed. The now-operative amended state complaint and cross-complaint were filed seven days and two months, respectively, after the federal action. These amendments added new claims and parties, fundamentally changing the scope and nature of the suit. Thus, the state court action as it currently exists came into being after the federal suit was filed. The state action's one-year seniority over the federal action, combined with extensive amending by the parties, does not weigh heavily in favor of abstention.

## D. Federal law.

■ The fifth factor is whether state or federal law controls. "[T]he presence of federal law issues is 'a major consideration weighing against surrender [of the district court's jurisdiction].'" *Silvaco Data Sys. v. Tech. Modeling Assocs.,* 896 F.Supp. 973, 977 (N.D.Cal.1995) (quoting *Moses Cone,* 460 U.S. at 2, 103 S.Ct. 927). Here, there is one federal law issue: the Lanham Act claim. This claim could have been brought in state court: "concurrent jurisdiction under the Lanham Act is available in state court." *Silvaco,* 896 F.Supp. at 977 (citing *In re Keasbey & Mattison Co.,* 160 U.S. 221, 230–231, 16 S.Ct. 273, 40 L.Ed. 402 (1895)). "If the state and federal courts have concurrent jurisdiction over a claim, this factor becomes less signifi-

**1182**

cant." *Nakash,* 882 F.2d at 1416. (citing *Moses Cone,* 460 U.S. at 26, 103 S.Ct. 927).

### E. Adequacy of state court action.

 The sixth factor requires an analysis of whether the state action is adequate to protect the parties' rights. Wright has not pointed to any facts that suggest otherwise. Also, as discussed earlier, Plaintiffs can invoke the state court's concurrent jurisdiction over their Lanham Act claims. Thus, this factor weighs in favor of abstention.

### F. Forum shopping.

 The seventh factor is whether the federal action is an instance of forum shopping. "[T]his Circuit has held that forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *Madonna,* 914 F.2d at 1371 (citing *Nakash,* 882 F.2d at 1417 and *American Int'l Underwriters,* 843 F.2d at 1259). "The Court is disinclined to ascribe [ ] an insidious motive to Plaintiff's decision to file the instant suit in federal court." *Puck,* 2007 WL 2315952, at *4.

Here, the state court has not made any substantive rulings against Plaintiffs. Also, Wright has not pointed to any tactical advantages that Plaintiffs may gain from the federal court rules. The Court is not persuaded that the Plaintiffs are forum shopping.

### G. Outcome.

Abstention is not warranted here because most of the factors weigh against it and because federal courts have a strong obligation to exercise jurisdiction.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to abstain (docket no. 8) is DENIED.

**IT IS SO ORDERED.**